[No. 19391. In Bank.—March 8, 1895.]

## ARCADIA B. DE BAKER, Respondent, v. SOUTHERN CALIFORNIA RAILWAY COMPANY, Appellant.

Negligence—Situation of Land Injured by Levee—Pleading—General Demurrer—Aider of Complaint by Judicial Notice.—Where a complaint for negligence in the construction of a levee causing injury to plaintiff's land is not definite and specific in itself in regard to the relative situation of the plaintiff's land and the levee constructed by defendants, its deficiencies may be supplied, as against a general demurrer, by the aid of facts of which the courts take judicial notice.

Id.—Judicial Notice—Line of Levee—Boundaries of City—Act of Incorporation—Public Surveys.—Where the levee was constructed along the west side of the Los Angeles river to the southern charter boundary of the city, the boundaries of which are defined in the act of incorporation by reference to the public surveys of the United States, and the lands of plaintiff are described in the complaint by reference to those surveys, the court will take judicial notice of the boundaries of

the city, and of the relative situation of the plaintiff's land to those boundaries and to the levee constructed by defendants.

ID.—NEGLIGENCE IN CONSTRUCTION OF LEVEE—SUFFICIENCY OF COMPLAINT.—A complaint showing that the city of Los Angeles granted lands along the Los Angeles river, including the west bank and a portion of its bed, to a railway corporation, on condition that the grantee should erect a levee to prevent the overflow from river floods of the lands along the western line of the tract granted, and that the railway company did not stop in constructing the levee at the point designated by the city, but extended it to the southern charter boundary, into and nearly across the river-bed, and so negligently and carelessly constructed the levee that it obstructed the natural channel and natural flow of the water, and diverted it from its natural course, and that in an unusual flood the water of the river was directed with such force against the eastern bank that it cut a new and permanent channel through lands owned by the plaintiff, and damaged the plaintiff by washing away a considerable acreage of his land, by the deposit of sand and bowlders, by the division of the tract into two parts separated by a new and permanent channel of the river, and by the destruction of plaintiff's fences, etc., states a *prima facie* cause of action for negligence, and is sufficient to throw upon defendants the burden of alleging and proving due care.

ID.—DEFENSE IMPROPERLY STRICKEN OUT—CONSTRUCTION OF LEVEE UNDER CITY ORDINANCE.—An answer setting up that the levee was constructed and maintained under the terms and conditions of an ordinance of the city of Los Angeles, and was constructed thereunder for the city and not for the railway company, and was the property of the city and used for the protection of its lands from overflow, taken in connection with denials that it was negligently built or constructed, states a defense to the action, and it is error for the court to strike out that portion of the answer setting up the ordinance and contract with the city, and that the levee was constructed under the ordinance for the city and not for the defendant.

ID.—REVIEW OF ORDER STRIKING OUT PLEADING—SUBSEQUENT AMENDMENT—INCONSISTENT DEFENSE.—The correctness of an order striking out a part of an answer is to be tested by reference to the state of the pleadings at the time it was made, and the order cannot be supported upon the ground that subsequently the defendant amended its answer by setting up the inconsistent defense that it built the levee on its own land for the protection of its road-bed, tracks, and other property; nor upon the ground that the evidence at the trial did not support or was inconsistent with the defense stricken out.

ID.—RIGHT OF CITY TO BUILD LEVEE—PROTECTION OF CITY LANDS—INCREASE OF FLOOD WATERS.—The city, as owner and proprietor of municipal lands, has the right to protect them from overflow by erecting a levee along or outside of the natural banks of the stream, without incurring any liability for the effects of a consequent increase of the flow of flood waters upon the lands of neighboring proprietors.

ID.—LEVEE INCLUDING PART OF BED OF STREAM—CONSTRUCTION OF ANSWER—DENIALS—DUTY OF COURT—ERROR IN STRIKING OUT PART OF DEFENSE.—Where the portion of the answer stricken out, construed against the pleader, shows that the levy was constructed within the

natural banks of the stream and partly in its bed, and there are no allegations as to the character of the river and its bed, or as to other facts justifying the construction of a levee within the natural banks, the part of the answer stricken out does not of itself state a complete defense based upon the right of the city as proprietor to protect its lands from overflow; but the special defense must be taken in its entirety, and the part of the answer stricken out must be construed in connection with and as aided by the denials with which it is coupled, and the answer taken as alleging, not only that the levee was built under the authority of the city, and for its use, but also that it was not constructed in disregard of the natural channel of the stream, or so as to divert its waters therefrom, excepting so far as the levee might in times of flood cause the waters to overflow neighboring lands not similarly protected, and that it was not negligently constructed, and, so construed, the answer states a justification of the city, and of the railroad company doing the work for the city, and the court was bound to assume that every thing alleged in the answer could be proven for the purpose of the motion, and it was error to strike out part of the special defense.

Id.—Absence of Negligence—Consequential Damages—Joint and Several Liability for Negligence.—If there was no negligence on the part of the city in creating the plan and fixing the location of the work, nor on the part of the defendant in the construction of the work, and no departure from the plan of the city, neither the city nor the defendant would be liable for consequential damages; but if there was negligence in a faulty plan and location of the work, so as to make it a dangerous obstruction to the river, which ordinary prudence should have guarded against, both the city and the railway company would be jointly and severally liable for the entire damage caused by such negligence.

Id.—Police Power of Municipal Corporation—Improving Channel and Banks of River.—By the charter of the city of Los Angeles, and by section 11 of article XI of the state constitution, the city is authorized to exercise the police power of the state for local purposes, and the corporate authorities of the city had statutory and constitutional power to improve the channel and banks of the Los Angeles river as they might, in the exercise of a sound discretion, deem most advantageous to the city and its inhabitants; and its work in so doing is distinctly of a public character, and within the police power of the state.

Id.—Means of Executing Police Power—Discretion—Exemption from Liability.—The means of executing the police power in the construction of a levee to improve the channel and banks of a river is confided to the discretion of the municipal body charged with the execution of the work, and if, in creating a plan and locating the lines of the levee, they exercise their judgment honestly and not maliciously, oppressively, or arbitrarily, to the injury of the rights of other persons, the corporation and its authorities cannot be held liable for mere error of judgment, and the persons executing the work with due care, and according to such plan, would be equally exempt from liability for any direct or consequential damage to third parties.

Id.—Defects in Pleading—Motion to Strike Out—Demurrer—Amendment.—The fact that a defense may have been defectively

pleaded in some particulars is not ground for a motion to strike out, but the proper method of reaching such defects is by demurrer, and a party who defectively pleads a good defense should be allowed an opportunity of amending his pleading.

ID. — CONSTITUTIONAL LAW — DAMAGING PROPERTY FOR PUBLIC USE — LIABILITY OF CONTRACTOR. — The question whether a municipal corporation is liable for the damaging of private property for public use cannot be material to the defense of a contractor who has built a public levee under authority of the city; but the liability to compensate for any damages to private property owners resulting from the rightful exercise of the municipal power would rest upon the city alone, and the contractor, who has merely constructed the work carefully and properly according to the plan, is exempt from liability.

ID. — REMOTE DAMAGES — VALIDITY OF ORDINANCE — COMPENSATION IN ADVANCE. — Where the property of the plaintiff was not taken for a levee, and the damage to it was not the natural, certain, and immediate consequence of the building of the levee, an ordinance of the city providing for its construction is not rendered invalid by reason of its failure to provide for compensation to plaintiff in advance of the construction of the levee.

ID. — INSTRUCTIONS — NEGLIGENT CONSTRUCTION OF LEVEE — KNOWN DANGER OF EXTRAORDINARY FLOOD. — An instruction to the effect that if the levee was improperly and negligently built by the defendant, and diverted the river and the channel thereof so as to make them run through the plaintiff's land, it is no defense that the damage was done in the time of an extraordinary flood, if the danger of an extraordinary flood was known to the defendant, or could have been ascertained by inquiry, and that in such case they were bound to guard against it, must be read in connection with other instructions, and is not objectionable, if, when so read, it could not have been understood to require the defendant to exhaust all possible sources of inquiry as to previous extraordinary floods, but only to have used ordinary prudence.

ID. — PROTECTION OF LANDS OF DEFENDANT — INJURY TO LANDS. — An instruction that, as matter of law, the defendant had no right to build a levee in the bed of the Los Angeles river in such a way as to obstruct the natural flow of the river, whether in high or low water, to the injury of others, and it makes no difference that the land upon which the levee was constructed belonged to the railroad company, and that although a party owns the bed of the stream, that does not entitle him to build an obstruction in the stream that will damage other lands than his own, is not sufficiently guarded as to the right of the defendant to protect its lands.

ID. — INSTRUCTION ASSUMING FACT — EXTRAORDINARY FLOODS. — An instruction assuming the fact of the occurrence of extraordinary floods in the past cannot be prejudicial error, where the witnesses were unanimous on that point.

ID. — MODIFICATION OF INSTRUCTION — PROTECTION OF LANDS OF RAILROAD — DIVERSION OF WATER FROM NATURAL CHANNEL. — An instruction asked by the defendant, to the effect that it had a lawful right to construct and maintain such levee or other barrier as would be necessary for the protection of its land and railroad from the overflow of the river,

is properly modified by the court by adding thereto the clause "provided it did not obstruct the flow in its natural channel, or divert it therefrom, to the injury of the plaintiff."

ID.—INSTRUCTION UPON POINT, NOT IN ISSUE.—An instruction should not be given upon a point not in issue.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial.

The main facts are stated in the opinion of the court.

Instructions Nos. II, IV, X, and XIII, asked by plaintiff, referred to in the opinion of the court, were as follows:

"II.   To cause water to flow wrongfully upon another's land which would not flow there naturally is to create a nuisance, and the party creating such nuisance is liable for the damages caused thereby."

"IV.   If the levee was improperly and negligently built by defendant, and diverted the river and the channel thereof so as to make them run through the plaintiff's land, it is no defense that the damage was done in the time of an extraordinary flood, if the danger of extraordinary flood was known to the defendant, or could have been ascertained by inquiry.   In such case they were bound to guard against it."

"X.   There is no question in this case about any permission of the city to build the levee complained of, and the jury are instructed, as matter of law, that the defendant had no right to build a levee in the bed of the Los Angeles river in such a way as to obstruct the natural flow of the river, whether in high or low water, to the injury of others, and it makes no difference that the land upon which the levee was constructed belonged to the railroad company.   Although a party owns the bed of the stream, that does not entitle him to build an obstruction in the stream that will damage other lands than his own."

"XIII.   It was the duty of defendant to sufficiently provide for the proper conduct and escape for the water

of not only ordinary floods but also of waters of such unusual or extraordinary floods as it should have anticipated would or might occasionally occur in the future, as they had actually occurred after intervals, though of irregular duration, in the past. If, therefore, you believe that the defendant negligently failed to so provide, you will find for the plaintiff, if you find from the evidence that the plaintiff has suffered damage thereby."

Defendant's instruction XIV, as referred to in the opinion of the court, is as follows:

" XIV. If the jury find from the evidence that the defendant, or its predecessor, was, in December, 1889, the owner of the land lying immediately to the west of the levee, as constructed from First street to the southern patent boundary of the city, upon which it had constructed its line of railroad, then you are instructed that it had a lawful right to construct and maintain such levee or other barrier as would be necessary for the protection of such lands and railroad from the overflow of the Los Angeles river."

The court modified this instruction by adding thereto the following clause: " Provided it did not obstruct the flow in its natural channel, or divert it therefrom, to the injury of the plaintiff."

*C. N. Sterry* and *W. J. Hunsaker*, for Appellants.

The complaint construed against the pleader does not state a cause of action. Presumptions are always against the pleader, and all doubts are to be resolved against him; for it is to be presumed that he has stated his case as favorably as possible to himself. (*Joseph* v. *Holt*, 37 Cal. 250, 257; *Rogers* v. *Shannon*, 52 Cal. 99; *Landers* v. *Bolton*, 26 Cal. 418; *Marriner* v. *Smith*, 27 Cal. 652; *Campbell* v. *Jones*, 38 Cal. 507; *Collins* v. *Townsend*, 58 Cal. 608; *Salisbury* v. *Shirley*, 53 Cal. 465; *Potter* v. *Fowzer*, 78 Cal. 493.) The same rules obtain under the many decisions of this court in determining whether a complaint states facts sufficient to support a judgment rendered upon it. (*Campbell* v. *Jones*, 38 Cal. 507; *Bar-*

*ron* v. *Frink,* 30 Cal. 486; *Choynski* v. *Cohen,* 39 Cal. 501; 2 Am. Rep. 476; *Lake* v. *Tebbitts,* 56 Cal. 481; *Morgan* v. *Menzies,* 60 Cal. 341; *Richards* v. *Travelers' Ins. Co.,* 80 Cal. 505.) The complaint does not charge a willful or intentional injury, under section 1714 of the Civil Code, and was so construed by the court below, and should be so construed upon this appeal. (*Emerson* v. *County of Santa Clara,* 40 Cal. 543; *Trenor* v. *Central Pac. R. R. Co.,* 50 Cal. 233; *Helbing* v. *Svea Ins. Co.,* 54 Cal. 159; 35 Am. Rep. 72.) The complaint shows no violation of a duty owed from defendant to plaintiff, nor any knowledge of fact out of which duty springs. (*Smith* v. *Whittier,* 95 Cal. 279; 16 Am. & Eng. Ency. of Law, 411; *Evansville etc. R. R. Co.* v. *Griffin,* 100 Ind. 221; 50 Am. Rep. 783; *Cahill* v. *Layton,* 57 Wis. 600; 46 Am. Rep. 46; *Griswold* v. *Chicago etc. Ry.,* 64 Wis. 653; *Cole* v. *McKey,* 66 Wis. 500; 57 Am. Rep. 293; *Flint etc. Ry. Co.* v. *Stark,* 38 Mich. 718; *Kahl* v. *Love,* 37 N. J. L. 8; *Sweeney* v. *Old Colony etc. R. R. Co.,* 10 Allen, 372; 87 Am. Dec. 644; *Benson* v. *Baltimore Traction Co.,* 77 Md. 535; 39 Am. St. Rep. 436; *McCauley* v. *Logan,* 152 Pa. St. 202.) The facts creating the duty must be alleged. (2 Addison on Torts, 1 Wood's ed., 480; *City of Buffalo* v. *Holloway,* 7 N. Y. 493; 57 Am. Dec. 550; *Taylor* v. *Atlantic etc. Ins. Co.,* 2 Bosw. 106; *Seymour* v. *Maddox,* 16 Q. B. R. 326.) Where there is a right to construct a levee, the mere damage to plaintiff's land does not prove a legal injury. (*Lamb* v. *Reclamation Dist.,* 73 Cal. 128; 2 Am. St. Rep. 775; *Eustace* v. *Johns,* 38 Cal. 3.) The facts constituting the negligence must be averred, and proved as averred. (*Woodward* v. *Oregon Ry. & Nav. Co.,* 18 Or. 289; *Heilner* v. *Union Co.,* 7 Or. 84; 33 Am. Rep. 703; *Lakin* v. *Oregon Pac. Ry. Co.,* 15 Or. 220; *Waldbier* v. *Hannibal etc. R. R. Co.,* 71 Mo. 514; *Meyer* v. *Atlantic etc. Ry. Co.,* 64 Mo. 542; *Edens* v. *Hannibal etc. R. R. Co.,* 72 Mo. 212; *Chicago etc. R. R. Co.* v. *Harwood,* 90 Ill. 425; *Thomas* v. *Georgia R. R. & B. Co.,* 40 Ga. 231; *Lang* v. *Doxey,* 50 Ind. 385; *McPherson* v. *Pacific Bridge Co.,* 20 Or. 286; *Miles* v. *McDermott,* 31 Cal. 271; *Rear-*

*don* v. *San Francisco*, 66 Cal. 496; 56 Am. Rep. 109; *Going* v. *Dinwiddie*, 86 Cal. 633.) The court erred in striking out the part of the answer pleading the authority of the city ordinance for construction of the levee. The city as proprietor had the right to protect its lands by a levee. (*McDaniel* v. *Cummings*, 83 Cal. 515; *Lamb* v. *Reclamation Dist.*, 73 Cal. 125; 2 Am. St. Rep. 775; *Gray* v. *McWilliams*, 98 Cal. 157; 35 Am. St. Rep. 163.) The city not being liable, defendant was not liable as a contractor under the city. (*Ottenot* v. *New York etc. R. R. Co.*, 119 N. Y. 603; *Rauenstein* v. *New York L. & W Ry. Co.*, 136 N. Y. 528.) There is no liability for consequential damage, if there was no defect in the plan, and no negligence in the construction of the levee. (Wharton on Negligence, sec. 786; 16 Am. & Eng. Ency. of Law, 417.) Every citizen holds his property subject to the police power of the state. (1 Dillon on Municipal Corporations, 4th ed., 212; *Thorpe* v. *Rutland etc. R. R. Co.*, 27 Vt. 144; *Woodward* v. *Fruitvale Sanitary Dist.*, 99 Cal. 554; *Carthage* v. *Frederick*, 122 N. Y. 274; 19 Am. St. Rep. 490; *Winslow* v. *Winslow*, 95 N. C. 24; *Henry* v. *Roberts*, 50 Fed. Rep. 904; *Platte etc. M. Co.* v. *Dowell*, 17 Col. 376; *Green* v. *State*, 73 Cal. 29; *Hoagland* v. *State* (Cal., Aug. 27, 1889), 22 Pac. Rep. 142.) The presumption is that official duty was properly performed in the location of the levee. (Code Civ. Proc., sec. 1963, subd. 15; *Watkins* v. *Lynch*, 71 Cal. 21, 24; *Eads* v. *Clarke*, 68 Cal. 481, 484; *Spaulding* v. *Homestead Assn.*, 87 Cal. 40, 48; *Weaver* v. *Fairchild*, 50 Cal. 360, 362; *Reclamation Dist.* v. *Wilcox*, 75 Cal. 443, 451; *Fanning* v. *Bohme*, 76 Cal. 149, 152.) Instructions IV, V, and XIII, requested by plaintiff, and the modification made by the court to defendant's instruction XIV, erroneously made defendant an insurer against damage to plaintiff. (*Gulf etc. Ry. Co.* v. *Killebrew* (Tex., June 21, 1892), 20 S. W. Rep. 182; *Hoffman* v. *Tuolumne Co. Water Co.*, 10 Cal. 413; *Union Pac. Ry. Co.* v. *Milliken*, 8 Kan. 650; *Hopkins* v. *Butte etc. Co.*, 13 Mont. 223; 40 Am. St. Rep. 438.) The instructions were incon-

sistent, and that is cause for reversal. (*Brown* v. *McAllister*, 39 Cal. 573; *Aguirre* v. *Alexander*, 58 Cal. 21; *People* v. *Bush*, 65 Cal. 134; *Sappenfield* v. *Maine Street etc. R. R. Co.*, 91 Cal. 48; *McCreery* v. *Everding*, 44 Cal., 246; *Chidester* v. *Consolidated People's Ditch Co.*, 53 Cal. 56.) "An erroneous instruction is not cured by a correct statement of the law in another part of the charge." The contractor is not liable for neglect of its city's duty, where the contractor does no positive wrong, or neglects no duty on his part. (Cooley on Torts, 2d ed., 162; Bishop's Non-Contract Law, 526, 628; *Lancaster* v. *Connecticut Mut. Life Ins. Co.*, 92 Mo. 460; 1 Am. St. Rep. 739; *Boswell* v. *Laird*, 8 Cal. 469; 68 Am. Dec. 345.) The ordinance stricken out was the exercise of a governmental function and of the police power of the state. (Const., art. XI, sec. 11; Stats. 1867–68, p. 167; Stats. 1875–76, p. 697; *Transportation Co.* v. *Chicago*, 99 U. S. 641; *Keller* v. *Corpus Christi*, 50 Tex. 628; 32 Am. Rep. 613; Jones on Negligence of Municipal Corporations, c. 4; 1 Beach on Public Corporations, sec. 4, note 3.) There was no occasion for the power of eminent domain, there being no physical directness between the act and the remote damage complained of. (*Lamb* v. *Reclamation Dist.*, 73 Cal. 132; 2 Am. St. Rep. 775; *Henry* v. *Vermont Cent. R. R. Co.*, 30 Vt. 638; 73 Am. Dec. 329; *Stone* v. *Fairbury etc. R. R. Co.*, 68 Ill. 394; 18 Am. Rep. 556; *Green* v. *Swift*, 47 Cal. 536; *Peart* v. *Meeker*, 45 La. Ann. 421.) The tenth instruction given at plaintiff's request erroneously assumed that negligence was proved. (*Stone* v. *Geyser Q. M. Co.*, 52 Cal. 315; *Helbing* v. *Svea Ins. Co.*, 54 Cal. 156; 35 Am. Rep. 72; *People* v. *Walden*, 51 Cal. 588; *People* v. *Williams*, 73 Cal. 531.) The court erred in modifying the fourteenth instruction requested by defendant, so as to make defendant liable at all events, without reference to negligence for injury caused to plaintiff by diversion of the water by the levee from its natural channel, though necessary to the protection of plaintiff's land from overflow. (*Lamb* v. *Reclamation Dist.*, 73 Cal. 125; 2 Am. St. Rep. 775; *McDavid* v. *Cum-*

*mings*, 83 Cal. 575; *Gray* v. *McWilliams*, 98 Cal. 157; 35 Am. St. Rep. 163.) A contractor who does work for a municipal corporation is not liable for consequential damages arising from the doing of the work according to the terms of the contract and without negligence, whether the city is liable or not. (*Shaw* v. *Crocker*, 42 Cal. 435; *Transportation Co.* v. *Chicago*, 99 U. S. 635; *Radcliffe* v. *Mayor etc.*, 4 N. Y. 195; 53 Am. Dec. 357; *Bellinger* v. *New York Cent. R. R. Co.*, 23 N. Y. 42; *Wilson* v. *Mayor of New York*, 1 Denio, 595; 43 Am. Dec. 719; *Goodloe* v. *Cincinnati*, 4 Ohio, 500; 22 Am. Dec. 764; *Covert* v. *Crawford*, 141 N. Y. 521; 38 Am. St. Rep. 826; *Governor* v. *Meredith*, 4 Durn. & E. 796; *Boulton* v. *Crowther*, 2 Barn. & C. 703; *Graves* v. *Otis*, 2 Hill, 466; *Benedict* v. *Goit*, 3 Barb. 459; *Green* v. *Borough of Reading*, 9 Watts, 382; 36 Am. Dec. 127; *Henry* v. *Pittsburgh etc. Bridge Co.*, 8 Watts & S. 85; *Geszler* v. *Georgetown*, 6 Wheat. 593; *Matter of Furman Street*, 17 Wend. 667.)

*Wells, Monroe & Lee*, for Respondent.

Negligence is an ultimate fact, for the purpose of pleading, and the particulars need not be set forth. (*Louisville etc. R. R. Co.* v. *Wolfe*, 80 Ky. 84; *Clark* v. *Chicago etc. Ry. Co.*, 28 Minn. 69; *Rolseth* v. *Smith*, 38 Minn. 14; 8 Am. St. Rep. 637; *Lucas* v. *Wattles*, 49 Mich. 380; *Keating* v. *Brown*, 30 Minn. 9; *Hedge* v. *Gayoso Hotel Co.*, 43 Fed. Rep. 463; *Cleveland etc. Ry. Co.* v. *Wynant*, 100 Ind. 160; *Jones* v. *White*, 90 Ind. 255; *Cincinnati etc. Ry. Co.* v. *Gaines*, 104 Ind. 526; 54 Am. Rep. 334; *Wabash etc. Ry. Co.* v. *Johnson*, 96 Ind. 46; *Louisville etc. Ry. Co.* v.*Jones*, 18 Ind. 551; *Wilson* v. *Denver etc. R. R.*, 7 Col. 101; *Fitts* v. *Waldeck*, 51 Wis. 567; *Hayden* v. *Anderson*, 17 Iowa, 162; *Ohio etc. Ry. Co.* v. *Collarn*, 73 Ind. 265; *Lake Shore etc. Ry. Co.* v. *Lavalley*, 36 Ohio St. 225; Thompson on Negligence, 1246; *Stephenson* v. *Southern Pac. Co.*, 102 Cal. 143.) To divert or unreasonably obstruct a watercourse is a private nuisance, actionable at law. (Ray on Negligence of Imposed Duties, 476.) A person who obstructs a water-

course or channel on his land, in which the surface water has been accustomed to flow for many years, is liable for the damages thereby occasioned to a lower proprietor. (*Rhoads* v. *Davidheiser*, 133 Pa. St. 226; 19 Am. St. Rep. 630.)   Diverting water from its usual and customed channel, to the inconvenience or injury of others, is a nuisance.   (1 Harrison Damages by Corpora-actions, 230; *Plumleigh* v. *Dawson*, 6 Ill. 544; 41 Am Dec. 199; *Evans* v. *Merriweather*, 4 Ill. 492; 38 Am. Dec. 106.)   "When water takes a definite channel it is a watercourse, and no person through whose land it flows has the right to divert it from its natural channel, so as to cause injury to another landowner by the diversion." (*Shields* v. *Arndt*, 4 N. J. Eq. 234.)   For diversion of a natural watercourse by a railroad, or individual, damages are recoverable where they ensue. (*Learned* v. *Castle*, 78 Cal. 454; *East St. Louis etc. Ry. Co.* v. *Eisentraut*, 134 Ill. 96; *Wright* v. *Syracuse etc. Ry. Co.*, 3 N. Y. Supp. 480; 49 Hun, 445; *Ohio etc. Ry. Co.* v. *Thillman*, 143 Ill. 127; 36 Am. St. Rep. 359; *Grant* v. *Kugler*, 81 Ga. 637; 12 Am. St. Rep. 348; *Tillotson* v. *Smith*, 32 N. H. 90; 64 Am. Dec. 355; *Merritt* v. *Parker*, 1 N. J. L. 530; *Van Hoesen* v. *Coventry*, 10 Barb. 518; Angell on Watercourses, secs. 96, 108 *e*, 108 *k*, 335; Gould on Waters, sec. 213.)   The diversion of a stream not navigable from its natural channel into an artificial one, or changing the course by an embankment, is a taking of the private property of an individual, although such improvement is made with skill and care.   The injury is none the less because the work is performed with skill and care.   (Mills on Eminent Domain, sec. 81; *Tinsman* v. *Belvidere etc. Ry. Co.*, 26 N. J. L. 148; 69 Am. Dec. 565; *Gardner* v. *Newburgh*, 2 Johns. Ch. 162; 7 Am. Dec. 526; *Bottoms* v. *Brewer*, 54 Ala. 288.)   Defendants were not justified in altering, for their own use or benefit, the course in which the flood water had been accustomed to run; there is no difference in this respect between flood water and an ordinary stream. (*Crawford* v. *Rambo*, 44 Ohio St. 279; *Byrne* v. *Minneapolis etc. Ry.*

*Co.,* 38 Minn. 212; 8 Am. St. Rep. 668; Gould on Waters, secs. 160, 209; *Rex* v. *Trafford,* 1 Barn. & Adol. 874; *Burwell* v. *Hobson,* 12 Gratt. 322; 65 Am. Dec. 247; *Lawrence* v. *Great Northern R. R. Co.,* 16 Q. B. R. 643; cited in *O'Connell* v. *East Tenn. etc. Ry. Co.,* 87 Ga. 246; 27 Am. St. Rep. 246; *Kankakee etc. R. R. Co.* v. *Horan,* 131 Ill. 288.) Negligence is presumed from injury, in the absence of explanation, where the thing causing the injury is under the management of defendant or his servants, and the casualty is such as does not ordinarily happen if those who have the management use proper care. (Ray on Negligence of Imposed Duties, 147; *Breen* v. *New York Cent. etc. R. R. Co.,* 109 N. Y. 297; 4 Am. St. Rep. 450; *Edgerton* v. *New York Cent. etc. R. R. Co.,* 39 N. Y. 227; *Mullen* v. *St. John,* 57 N. Y. 567; 15 Am. Rep. 530; *Kirst* v. *Milwaukee etc. Ry. Co.,* 46 Wis. 489.) Where the work done causes an invasion of private rights by flooding as the necessary result of the work, the persons doing it are liable, and cannot justify under the authority of a municipal corporation. (*Ashley* v. *Port Huron,* 35 Mich. 301; 24 Am. Rep. 552; *Pumpelly* v. *Green Bay Co.,* 13 Wall. 166; *Arimond* v. *Green Bay etc. Co.,* 31 Wis. 316; *Eaton* v. *Boston etc. R. R. Co.,* 51 N. H. 514; 12 Am. Rep. 147; *Alton* v. *Hope,* 68 Ill. 167; *Pettigrew* v. *Evansville,* 25 Wis. 223; 3 Am. Rep. 50; *Aurora* v. *Gillett,* 56 Ill. 132; *Aurora* v. *Reed,* 57 Ill. 30; 11 Am. Rep. 1; *Nevins* v. *Peoria,* 41 Ill. 502; 89 Am. Dec. 392; *Taylor* v. *Austin,* 32 Minn. 247; *Barden* v. *City of Portage,* 79 Wis. 126; *Spelman* v. *City of Portage,* 41 Wis. 144; Ray on Negligence of Imposed Duties, 306, 307; *Young* v. *Kansas City,* 27 Mo. App. 101.) A city is liable for negligence in devising the plan of a public work, as well as in executing the work. (*Evansville* v. *Decker,* 84 Ind. 325; 43 Am. Rep. 86; *Cummins* v. *Seymour,* 79 Ind. 491; 41 Am. Rep. 618; *North Vernon* v. *Voegler,* 103 Ind. 314; *Crawfordsville* v. *Bond,* 96 Ind. 236; *Ferguson* v. *Davis Co.,* 57 Iowa, 601; *Indianapolis* v. *Huffer,* 30 Ind. 235; *Van Pelt* v. *Davenport,* 42 Iowa, 308. 20 Am. Rep. 622; *Weis* v. *Madison,* 75 Ind. 241; 39 Am;

Rep. 135; *Powers* v. *Council Bluffs*, 50 Iowa, 197.) Defendant cannot plead the ordinance of the city, or any legislative act, to justify a nuisance, or the impairing of plaintiff's rights by flooding the lands of plaintiff. (*Woodruff* v. *North Bloomfield Gravel Min. Co.*, 18 Fed. Rep. 753; *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166; *Arimond* v. *Green Bay etc. Co.*, 31 Wis. 316; *Hooker* v. *New Haven etc. Co.*, 14 Conn. 146; 36 Am. Dec. 477; *Rhodes* v. *Cleveland*, 10 Ohio, 159; 36 Am. Dec. 82; *Eaton* v. *Boston etc. R. R.*, 51 N. H. 504; 12 Am. Rep. 147; *Lackland* v. *North Missouri R. R. Co.*, 31 Mo. 180; *Tinsman* v. *Belvidere etc. Ry. Co.*, 26 N. J. L. 148; 69 Am. Dec. 565; *Rowe* v. *Portsmouth*, 56 N. H. 291; 22 Am. Rep. 464; *New Albany etc. R. R. Co.* v. *O'Daily*, 13 Ind. 353; *Cincinnati etc. Ry. Co.* v. *Cumminsville*, 14 Ohio St. 523; *Ashley* v. *Port Huron*, 35 Mich. 296; 24 Am. Rep. 552; *Plum* v. *Morris Canal etc. Co.*, 10 N. J. Eq. 256; *Savannah* v. *Cleary*, 67 Ga. 153; *Little Rock etc. R. Co.* v. *Chapman*, 39 Ark. 463; 43 Am. Rep. 280; *McCombs* v. *Akron*, 15 Ohio, 474; *Payne* v. *Kansas City etc. R. R.*, 112 Mo. 6; *McKenzie* v. *Mississippi etc. Boom Co.*, 29 Minn. 288.) All persons contributing to a loss are jointly and severally liable for the entire damage. (Bishop's Non-Contract Law, sec. 321; *Kankakee etc. R. R. Co.* v. *Horan*, 131 Ill. 288; *McKenzie* v. *Mississippi etc. Boom Co.*, 29 Minn. 288; *Heinlen* v. *Heilbron*, 71 Cal. 561; *Low* v. *Mumford*, 14 Johns. 426; 7 Am. Dec. 469; *Pierson* v. *McCurdy*, 61 How. Pr. 136, 137; *Roberts* v. *Johnson*, 58 N. Y. 616; *Creed* v. *Hartmann*, 29 N. Y. 592, 593; 86 Am. Dec. 341; *Trowbridge* v. *Forepaugh*, 14 Minn. 137; Pomeroy's Remedies and Remedial Rights, secs. 307, et seq; *Payne* v. *Kansas City etc. R. R. Co.*, 112 Mo. 6.)

BEATTY, C. J.—The plaintiff in this action is the owner of a large tract of land lying adjacent to and partly within the charter boundaries of the city of Los Angeles. The defendant is a railway corporation, formed by the consolidation of several older corporations, whose properties it has acquired and whose obli-

gations it has assumed. The Los Angeles river flows through the city of Los Angeles from north to south. Ordinarily it is a small stream, and within the limits of the city is confined to a narrow channel, which sometimes flows in one place and sometimes in another, over a sandy bed about a half mile in width, which is bounded on the east by a well-defined and comparatively high natural bank, and on the west by a bank considerably lower and less plainly defined. Owing, however, to the fact that the river has its sources in the high mountains near the city, it is subject, during the rainy season, to sudden floods, which fill the entire bed of the stream and frequently overflow its banks. Occasionally, at irregular intervals of from two to twenty years, during the last fifty years, such floods have reached an extraordinary height, carrying away dwellings and other structures erected near the banks of the stream.

The city of Los Angeles, as successor to the pueblo, the original owner of most of the lands within the charter limits, granted to one of the predecessors of defendant a strip of land, including the west bank and a large portion of the bed of the Los Angeles river, and extending from the southern patent line of the pueblo lands (which is parallel to and about twelve hundred feet north of the southern charter line of the city) northward, along the river for a distance of several miles. This grant also included a right of way for railway tracks along and across the streets of the city; and such tracks, with the necessary sidings, turnouts, etc., have since been laid and operated by the grantees, including the defendant.

The lands so granted, as well as other adjacent lands within the city, were, however, subject to overflow from the river floods, and one of the conditions of the grant was that the grantee should erect a levee for the protection of such lands along the western line of the tract granted down to a designated point below First street. Such levee was accordingly built by the grantee down to the point designated, and more than a

mile beyond said point to the southern charter line of
the city.   The line of the levee, down to the point des-
ignated in the ordinance and grant of the city, seems to
have been located on or beyond the western bank of the
river, and wholly outside of the river-bed.   But defend-
ant's predecessor did not stop at the point so designated.
It continued the levee in a direct line to the southern
charter boundary, as stated, and in so doing extended
it into and nearly across the river-bed.   As so con-
structed, this levee, which is protected on its eastern face
by piling and planking, intersects the west bank of the
river, about a mile above the charter line, at a point
where the river-bed curves to the west, and at its lower
extremity approaches to within three hundred feet of
the eastern bank, the distance between the natural banks
at that point being fully two thousand three hundred
feet.   This levee was commenced in 1887 and completed
in 1888.   In January, 1890, occurred one of those un-
usual floods in the Los Angeles river above referred
to, and the water, being prevented by the levee from
spreading out over the river-bed, as it had formerly
done, was directed with such force against the eastern
bank, a short distance south of the charter line, that it
cut a new and permanent channel through the lands on
and adjacent thereto, including the tract owned by
plaintiff.   The damage sustained by plaintiff consisted
in the washing away of a considerable acreage of land,
the deposit of sand and bowlders on other portions, the
division of the tract into two parts, separated by the
new and permanent channel of the river, destruction of
fences, etc.

This action was brought for the recovery of such
damages.   The plaintiff had judgment in the superior
court, and the defendant appeals from the judgment
and an order denying its motion for a new trial.

The foregoing statement of the case is based upon the
evidence adduced at the trial, and is necessary to a
proper discussion of the exceptions of the defendant to
the rulings of the superior court upon objections to evi-

dence, and in giving, refusing, and modifying instructions requested by the parties. It will also serve to illustrate some of the points involved in the assignments of error in regard to the order overruling the defendant's demurrer to the complaint, and the order striking out of the original answer the principal matter of defense therein alleged, which assignments will be first considered.

The demurrer to the complaint was general for want of facts, and the principal point urged in its support is that the facts alleged do not show that the defendant, or its predecessor, violated any duty to the plaintiff, because they do not show how her land was situated in relation to the Los Angeles river, or to the levee complained of; and, consequently, that it does not appear from the allegations of the complaint that the builders of the levee had any reason to anticipate damage to her lands from the work in which they were engaged.

The complaint is certainly not as definite and specific in regard to the relative situation of the plaintiff's land to the defendant's levee as it might easily have been made; but, with the aid of certain facts, of which the courts may take judicial notice, its deficiencies in this respect can be supplied. The boundaries of the city of Los Angeles are defined in the act of incorporation by reference to the public surveys of the United States, and, the lands of plaintiff being described by reference to the same surveys, we are enabled to spell out the fact that the northwestern corner of the plaintiff's lands constituted the southeastern corner of the city according to the act of incorporation, of which, as a public act of the legislature of California, we take judicial notice. In the same way we know the relative position of the entire tract to the corporate boundaries of the city. The Los Angeles river, also, is mentioned in more than one public statute, and no doubt we may properly take judicial notice of the fact that it flows from north to south through the city of Los Angeles, and near its eastern limits.

But, even if we cannot take notice of these facts, the complaint alleges that said river flows down through "the city." In what direction it flows is not stated, but from the allegations that it has an east bank and a west bank, and that the obstruction of its channel and diversion of its current by a levee erected along or partly along the west bank within the city causes the river to cut through the east bank and flow across the lands of plaintiff, which, as we have seen, adjoin the city on the southeast, it may be inferred that the situation and flow of the stream are as above stated. That the words "the city," which occur several times in the complaint, mean the city of Los Angeles appears from their use in the description of plaintiff's lands in connection with boundaries which can only belong to that particular city.

As to this matter, therefore, of the relative situation of plaintiff's lands and the levee—the complaint, though lacking in directness and precision, is sufficient as against a general demurrer, and the other facts alleged make out a *prima facie* case of violation of rights of the plaintiff, which it was the duty of defendant's predecessors to regard. It is alleged in substance that, for the purpose of reclaiming and securing to themselves certain lands which had theretofore been inundated, they commenced and undertook to build a levee along the western side of the Los Angeles river; that they constructed said levee in a straight line down said river from First street without regard to the bed of the stream or the channel thereof, or where the water usually flowed, thereby diverting the same into a new channel; that the river flowed down through the city; that its banks were low on the west side and high on the east; that during the rainy season the river spreads over a large area of country, especially on the west side; that the channel of the river is tortuous and irregular; that the defendant and its predecessors, disregarding the current of said river and the quantity of water usually flowing down during the rainy season, and, disregarding

the natural channel of said river, carelessly and negli-
gently built and constructed said levee, and have since
maintained it *in such a manner as to obstruct the natural
channel thereof and the natural flow of the water, and have
so narrowed the channel as to cause the water flowing therein
to diverge from its natural course and its usual flow over
and upon the lands of plaintiff, by reason whereof the water
so diverted did, on or about the 26th of January, 1890,
begin to flow and ever since has flowed out of its natural
channel, in and upon the aforesaid lands of plaintiff, and
cut, destroyed, and carried away a large quantity of land,
and rendered a large quantity unfit for use, covering the
same with bowlders and sand, and cutting a large and deep
channel through said land, where the stream continues to
flow, destroying about nine hundred acres,* etc. Certainly
these facts, if true, gave plaintiff a right of action if the
situation of her land was such as to cast any duty of
guarding against damage to her upon the builders of the
levee, and we think that, considering its proximity to
the east bank of the river, and the fact that the actual
and direct consequence of the diversion of the river was
to cause it to cut and flow in a new channel across her
lands, a *prima facie* case of actionable negligence was
made out.

This is not like the case of *Lamb* v. *Reclamation Dis-
trict*, 73 Cal. 125, 2 Am. St. Rep. 775, and other similar
cases, in which it has been held that the erection of a
levee along the banks of our rivers to keep out flood
waters gives no right of action to those upon whose un-
protected lands the flood is thereby made to rise higher.
Here, according to the allegations, the levee was built
in the bed of the stream, obstructing and narrowing the
channel, directing the current against the opposite
bank, and causing it to cut a new channel across plain-
tiff's lands, where it permanently flows. These facts
broadly distinguish the present case from those referred
to. No natural person, or corporation organized for the
profit of its stockholders, has a right to inflict damage
of this character upon another; and to allege that such

acts have been carelessly and negligently done is, per-
haps, sufficient to show a cause of action without any
showing as to the relative situation of the land and the
obstruction complained of.   (*Stephenson* v. *Southern Pac.
Co.*, 102 Cal. 146.)   Here, however, the relative situa-
tion of the land and the levee is shown in the manner
above stated, and sufficiently, in our opinion, to throw
upon defendant the burden of alleging and proving due
care.

The superior court did not err in overruling the
demurrer to the complaint.

The demurrer having been overruled, the defendant
filed an answer admitting the construction, by itself and
its predecessors, of a levee along the western side of the
Los Angeles river, but denying that it was constructed
for the purpose of reclaiming to itself lands theretofore
inundated, and denying that it was constructed in a
straight line down the Los Angeles river from First
street, without regard to the bed or channel of the
stream, or where the water usually flowed, or that by
means thereof the water of the river was diverted into
a new channel.

For a further answer, and as a special and additional
defense to the action, the defendant set up a plea in sub-
stance as follows: That said levee was constructed and
has since been maintained under the terms and con-
ditions of a certain ordinance of the city of Los Ange-
les, for the uses and purposes therein expressed, and not
otherwise, and in the manner prescribed by the city of
Los Angeles through its duly constituted authorities,
and on the line by said city declared to be the official
western boundary of said river.   That after the con-
struction of said levee, under and in pursuance of and
in accordance with the terms and conditions of said
ordinance, the city of Los Angeles, by its duly con-
stituted officers and authorities, on the twenty-sixth
day of March, 1888, duly accepted said work and said
levee.   That, by reason of the premises aforesaid, the
said city of Los Angeles is, and at all the times men-

tioned in the complaint was, the owner and in possession of the said levee, and the whole thereof, and this defendant maintains the same by reason of the provisions of said ordinance and as a part of its consideration for the lands and premises conveyed to it by the city of Los Angeles, and this defendant has not now, and had not at any time since the date of said acceptance by the city, any right, title, interest, claim in, or authority over, said levee or any portion thereof, saving and excepting to keep the same in repair as required by the said ordinance, and the same is the property of the city of Los Angeles, and subject to its authority and control.

In connection with these allegations the ordinance referred to is set out in full, and also a grant of lands and rights of way from the city to defendant's predecessor, made in pursuance of the ordinance.

The following is the title of the ordinance, which was duly adopted December 8, 1886: "An ordinance to provide for the construction of a levee upon the westerly side of the Los Angeles river for the protection of property of inhabitants of said city from the high waters of said river; for the sale of city lands and grant of right of way to the Riverside, Santa Ana, and Los Angeles Railway Company for the construction of such levee."

And in the body of the ordinance it is declared that: "Said levee shall be built for the public benefit of the city of Los Angeles, and is intended to confine the high waters of the Los Angeles river within the levee so to be constructed, and to prevent the property of the inhabitants of said city on the westerly side of said levee from being injured or destroyed in times of high flood by waters overflowing the banks of the river."

Aside from this declaration the substance of the ordinance is a grant to the railway company named in the title—one of defendant's predecessors—of a strip of land bounded on the east by the west line of the official bed of the Los Angeles river, and extending

from the southern patent line of the pueblo lands several miles into the city, together with rights of way across and along the streets of the city for its tracks, the purpose of the grant being, as declared in the ordinance, " for the laying down, operating, and maintaining" a steam railway for the transportation of freight and passengers, and for the construction of switches, turnouts, depots, and other structures necessary for the successful conduct of its business. This grant is made upon condition (along with numerous regulations and reservations for the benefit of the city and the public) that the grantee shall construct and maintain a levee along the western line of the official bed of the river from Mission street to a designated point south of First street, for which work, when completed, the railway company is to receive twelve thousand dollars in money in addition to the said grant of land and rights of way.

The deed of grant, which is also set out in full, seems to follow strictly the terms of the ordinance. It is dated April 13, 1888, the levee having been formally accepted by the city March 26, 1888.

In connection with these allegations in regard to the building of the levee for and under contract with the city, and as a part of the same defense, the defendant repeats its denials that it recklessly or negligently built or constructed said levee in disregard of the current of said river, or the quantity of water usually flowing therein during the rainy seasons, or that it maintains said levee in such manner as to obstruct the natural channel of said river, or the natural flow of the water thereof, or that it or its predecessors have narrowed the channel in such way or manner as to cause the water flowing down said channel to diverge from its natural course or its usual flow over and upon plaintiff's lands, or that, by reason of any acts or doings of the defendant, said water was diverted or made to flow over the lands of plaintiff, etc.

With the exception of these denials all that portion of the answer setting up the ordinance of and contract

with the city, and the defense that the levee was constructed thereunder for the city and not for the defendant, was, on motion of the plaintiff, stricken out. Subsequent to the making of this order the defendant amended its answer, as so modified, by alleging, among other things, that "said levee was constructed along the western side of said Los Angeles river, as a necessity, upon its own land, for the purpose of protecting the roadbed and roadway of the said California Central Railway Company, predecessor of this defendant, and that the same was done in a workmanlike and skillful manner, with proper care, prudence, and foresight, for the purpose of preventing its tracks and roadbed from being flooded, injured, and washed away during times of flood and high water from the river, and during the time of year commonly known as the rainy season of California, and for the protection of its property, and for the safety and interest of patrons and passengers being transported over its said line."

It was upon the answer so amended (including other matters of defense not material to the present discussion) that the defendant was compelled to go to trial, and the assignment of error mainly relied upon in support of the appeal is the order of the court striking from the original answer the special defense above set forth.

The correctness of this order is to be tested by reference to the state of the pleadings at the time it was made. It cannot be supported upon the ground that subsequently the defendant amended its answer by setting up the somewhat inconsistent defense that it built the levee on its own lands for the protection of its roadbed, tracks, and other property. If both these defenses had been pleaded together in the original answer the mere fact of their *partial inconsistency* would not have justified the striking out of either of them. (*McDonald* v. *Southern Cal. Ry. Co.*, 101 Cal. 213, and cases cited.) Still less can the order be upheld upon the ground that the evidence at the trial did not support, or was inconsistent with, the defense stricken out. A defense which

a party is not allowed to plead is not likely to find support in the evidence offered or admitted at the trial. The question, therefore, is whether the facts as pleaded would constitute a defense to the cause of action stated in the complaint.

The appellant contends that such facts would, for more than one reason, constitute a good and sufficient defense. In the first place it is claimed that the city of Los Angeles, for the protection of its inhabitants and their property (the declared object of the ordinance pleaded in the answer), had the undoubted right to build the levee in question, without incurring any liability for such indirect and consequential damages as the plaintiff alleges in her complaint; and, consequently, that the defendant—a mere contractor for the work—cannot be liable. In the second place, it is claimed that, even if the city became liable to compensate the plaintiff for the resulting damage to her lands, such liability rested upon the city exclusively, and in nowise attached to the defendant or its predecessors.

In considering the various questions involved in these two propositions it is to be borne in mind that the city of Los Angeles is not only a municipal corporation, and, as such, invested for local purposes with a large share of the police power of the state, as well as the privilege of invoking the power of eminent domain; it was also shown by the allegations of the plea which was stricken out to have been, at the date of the passage of the ordinance providing for the erection of this levee, the owner and proprietor of the land upon which the line of the levee was located, as well as other lands within the city, which it was one of the objects of the levee to reclaim or protect. The rights of the city in these diverse characters must not be confounded, and we will first consider its rights as owner of said lands.

It cannot be doubted that as such owner or proprietor the city had the right to protect its own lands from overflow by erecting a levee along or outside of the natural banks of the stream, without incurring any liability for

the effects of a consequent increase of the flow of flood waters upon the lands of neighboring proprietors. (*Lamb* v. *Reclamation Dist.*, 73 Cal. 125; 2 Am. St. Rep. 775; *McDaniel* v. *Cummings*, 83 Cal. 515.)

It may be, also, that in the case of a stream such as the Los Angeles river was shown to be by the testimony, viz., a river with a sandy bed, half a mile in width, through which, except in times of flood, the water runs in a small and insignificant stream, now in one channel and again in another, a proprietor of the bed of the stream may have an equal right to reclaim a reasonable portion of such bed by means of a levee constructed within the banks; but, certainly, he could have no right for such purpose, so to obstruct the channel or divert the current as to force the water into a new and permanent channel, through the lands of other proprietors outside of the natural banks.

Did the allegations stricken from the answer show a lawful structure within this doctrine?

They were, as above shown, to the effect that the levee was erected on the west line of the "*official bed*" of the river, *i. e.*, upon a line which had been declared by a city ordinance to be the western bank of the river. This, so far as the court could see, might have been the natural bank or a line very widely divergent therefrom (which in point of fact it is), and the court was therefore justified in assuming, as against the pleader, that it was not the natural bank. Upon this assumption, and in the absence of any allegations as to the character of the river and its bed, or other facts justifying the construction of a reclamation levee within the natural banks, it cannot be said that this part of the answer stated a complete defense, based upon the right of the city, as a proprietor, to protect its lands from overflow, unless its affirmative allegations were aided by the denials, with which they were coupled, of the allegations of the complaint to the effect that the levee was built in disregard of the natural channel of the stream, etc. We cannot, however, see why, in construing this part of the

answer, such denials should be disregarded.  The special defense should be taken in its entirety, and, so construed, it states in effect that the levee was built by defendant for the owner of the lands upon which it was located to reclaim and protect them, and in such manner as not to interfere with the channel of the river or to divert its waters therefrom, except in so far as it might, in times of flood, cause them to overflow neighboring lands not similarly protected.  This was, if true, a justification of the city, and, necessarily, of the defendant in doing work for the city.  And since, for the purpose of the motion to strike out, the superior court was bound to assume that every thing alleged in the answer could be proved, it was error to grant the motion.

It is true, as above stated, that the evidence adduced at the trial not only failed to sustain this defense, but was in direct conflict with it.  It showed clearly that the levee was constructed by the defendant—apparently for purposes of its own—more than a mile beyond its southern extremity as designated in the ordinance; and it showed that this additional and unauthorized portion of the levee was the only part that encroached upon the natural bed of the stream.  The maps, diagrams, and other evidence introduced by the defendant, no less than the evidence introduced by the plaintiff, all agree upon this point, and all tend strongly to show that but for this unauthorized addition to the levee, as planned by the city, the damage to plaintiff's lands would not have occurred.  But we cannot, for this reason, hold that the order striking out was harmless error.  But for the order the defendant might have introduced evidence as to these matters that would have changed the aspect of the case, and we cannot assume that as the evidence is, the jury would have viewed it in the light in which it appears to us, if the case had been submitted to them upon the theory that the defense pleaded was a good defense.

Our conclusion on this point involves a reversal of the judgment, but, since the result will be a new trial

of the cause, it is necessary that we should indicate our views with reference to several other assignments of error involving questions likely to arise in the future progress of the litigation.

We cannot sustain the proposition of the appellant, that in view of the allegations of the original answer— and admitting, for the sake of the argument, that they disclosed no absolute right on the part of the city to build the levee—the only person owing any duty to the plaintiff to exercise care and skill to avoid damaging her property was the city. Conceding that the negligence complained of consisted solely in the faulty plan and location of the work, and not at all in the manner in which it was executed by the defendant, it seems to be settled by the decisions of this court that if the damage was actionable the city and the defendant would be jointly and severally liable. To place an unlawful obstruction in the bed of a stream, by which the current is directed into a new channel across another's land, makes a case clearly within the principle recently applied in *Green* v. *Berge*, 105 Cal. 52, and in the cases therein cited. If the work was such as to make the city liable, it made the defendant liable also, and the plaintiff could maintain her action against either or both. Of course, if the city exercised such care and skill in creating the plan and fixing the location of the work as to exempt it from any liability to the plaintiff, and the damage was wholly caused by such location and plan—no negligence being attributed to the defendant in the construction of the work, nor any departure from the plan—the defendant would be no more liable than the city. But if the work was inherently and according to its plan and location a dangerous obstruction to the river, such as ordinary prudence should have guarded against, not only the author of the plan to obstruct the stream, but the person placing the obstruction, was severally liable for the entire damage.

These questions, which have so far been considered solely with reference to the rights of the city of Los

Angeles as the owner of lands subject to overflow and capable of reclamation, assume a somewhat different aspect when considered with reference to the powers and duties of the municipal corporation as a public agent for the exercise of the police power of the state.

By section 1 of article IV of the charter of Los Angeles, which was in force at the date of the passage of the ordinance pleaded in the defendant's answer (Stats. of 1875–76, p. 697), very extensive police powers were conferred upon the corporate authorities for the protection of persons and property within the city; and by section 11, article XI, of the present constitution, which was also then in force, every municipal corporation may make and enforce within its limits all such local police, sanitary, and other regulations as are not in conflict with general laws. In other words, the corporate authorities were, not only by act of the legislature, but by the direct mandate of the people as expressed in the organic law, authorized to exercise the police power of the state for local purposes. There was also in existence an act of the legislature, passed in 1868 (Stats. of 1867–68, p. 167), by which the common council of the city were empowered to levy a special tax for the purpose of creating a Los Angeles river fund, which was to be expended in such manner as the mayor and common council should direct " in improving the channel and banks of said river in any manner deemed necessary by said mayor and common council for the protection of property on the banks of said river." Under these statutory and constitutional provisions it became the duty, as it was clearly within the power, of the corporate authorities to improve the channel and banks of the river as they might, in the exercise of a sound discretion, deem most advantageous to the city and its inhabitants.

The work which they were called upon to perform was, like the work performed by the levee commissioners under the act of the legislature referred to in *Green* v. *Swift*, 47 Cal. 539, distinctly of a public character and within the police powers of the state, its design be-

ing to protect a populous and important district of the
state.   The means of accomplishing this object—as in
the case referred to—was confided, and in more ample
measure, to the discretion of the body charged with the
execution of the work, and if, in creating a plan and
locating the lines of the levee, they exercised their judg-
ment honestly and not maliciously, oppressively, or
arbitrarily, to the injury of the rights of other persons,
they, the corporation and its authorities, could not be
held liable for mere errors of judgment, and the persons
executing the work with due care, and according to such
plan, would be equally exempt from liability for any
direct or consequential damage to third parties.   (*Green*
v. *Swift, supra.*)   It was error, therefore, in this aspect
of the case, also to strike from the defendant's answer
the matters of defense above mentioned; for, although
they may have been defectively pleaded in some partic-
ulars, the proper method of reaching such defects was
by demurrer, and not by motion to strike out.   A party
who defectively pleads a good defense should be allowed
an opportunity of amending his pleading.

It is suggested that, in view of the provision of our
present constitution (Const., art. I, sec. 14), that " pri-
vate property shall not be taken *or damaged* for public
use without just compensation having been first made
to, or paid into court for, the owner," the doctrine of
*Green* v. *Swift, supra,* is no longer applicable to cases of
this character.   It is possible that this may be true, but
it can make no difference in the present case whether
it is true or not.   Conceding, for the sake of the argu-
ment, that the effect of the constitutional provision is
to make the state, or a public agency by it employed in
the construction of a work designed to protect the lives
and property of a large community, liable for indirect
and consequential damages, such as were alleged and
proved in this case, and which could not have been
estimated or compensated in advance, although some
damage might naturally have been apprehended, it does
not follow that the contractor, executing the work care-

fully and properly according to the plan, would be liable. On the contrary, since in the case supposed the state or corporation would be liable, not for a tort, but only upon its obligation to compensate the damages resulting from the rightful exercise of its power, the liability would rest upon it alone, and the contractor, who has merely constructed the work carefully and properly according to the plan, will be exempt from any liability.

There was no taking of plaintiff's property in this case, either according to the facts alleged or facts found, even if tested by the doctrine of *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166, which has been held to be an extreme case. (*Green* v. *State*, 73 Cal. 29; *Lamb* v. *Reclamation Dist.*, 73 Cal. 125; 2 Am. St. Rep. 775.) Neither was the damage to it the natural, certain, and immediate consequence of the facts alleged. It did not appear, therefore, that the ordinance of the city was invalid by reason of its failure to provide for compensation to plaintiff in advance of the construction of the levee.

What has been said with reference to the error of the court in the order to strike out applies to the error assigned upon the ruling, limiting the purpose for which the ordinance was admitted in evidence. Even under the pleadings as they stood at the time of the trial, the ordinance was admissible for the purpose of showing that defendant's track had been rightfully laid within the city, and, consequently, that it could protect them by a lawful and proper levee, the question whether this levee had been constructed with due care being a question for the jury.

There were some rulings of the court upon objections to evidence and in giving and refusing instructions which, although proper enough under the pleadings as they stood, would not have been proper if the defense pleaded in the original answer had not been stricken out. We need not specify these rulings more particularly since they are sufficiently indicated by what has been said.

The court did not err in giving instruction No. IV

requested by the plaintiff. Read in connection with other instructions it could not have been understood to require the defendant to exhaust all possible sources of inquiry as to previous extraordinary floods.

Instruction No. X was not sufficiently guarded, even according to the theory upon which the case was tried.

Instruction XIII was, perhaps, erroneous in assuming as a fact the occurrence of extraordinary floods in the past, though, in view of the unanimity of the witnesses on that point, it can scarcely have been prejudicial.

There was no error in the modification made by the court in defendant's instruction XIV.

Instruction No. II asked by plaintiff seems to have been upon a point not in issue, and should have been omitted for that reason.

Aside from these particulars we see no error or inconsistency in the instructions.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.

McFARLAND, J., HARRISON J., GAROUTTE, J., and VAN FLEET, J., concurred.