JULIUS H. ANDERSON et al., Respondents, v. FAY
IMPROVEMENT COMPANY (a Corporation) et al.,
Appellants.

Eugene S. Clifford, Heller, Ehrman, White & McAuliffe, Maynard Garrison, Wallace, Garrison, Norton & Ray, Keith, Creede & Sedgwick, Frank J. Creede, John S. Howell and Frank J. Creede, Jr., for Appellants.

McMurray, Brotsky, Walker, Bancroft & Tepper, Gladstein, Andersen, Leonard & Sibbett and Lloyd E. McMurray for Respondents.

PETERS, P. J.—The plaintiffs brought this action against the several defendants for an injunction to compel the removal of a public improvement, and for damages. The trial court granted plaintiffs, as against all defendants, both an injunction and damages. Defendants appeal.

Plaintiffs are the owners of separate parcels of real property, that, prior to January of 1950, abutted on the easterly side of an unpaved unimproved dead end street known as Knox Street in San Francisco. This street ran in a general north-south direction, intersecting at its southern end with Felton Street, the northern end being a cul-de-sac. The corner lot on the easterly side of the intersection of Felton and Knox, with a 75-foot frontage, is owned by one Sullivan, not a party to this suit. Then comes the properties of the plaintiffs, in the following sequence: Schultz, with a 25-foot frontage, Anderson with a 100-foot frontage, Ballance with a 50-foot frontage and Quong Soon,* with a 50-foot frontage. Plaintiffs' homes had been built on these lots some years before 1950, some of them as much as 35 or 40 years prior.

Knox Street ran along the natural contour of a steep hillside, plaintiffs' homes being located on the lower east side of the street. There was some conflict as to the length of Knox Street as shown on the official maps, the testimony varying from 75 feet to 300 feet.

Prior to 1949 the property on the upper or west side of Knox Street was unimproved and belonged to Thomas Vallerga and Richard Mesak. Early in 1949 Vallerga and Mesak decided to subdivide their property and filed a subdivision map with the board of supervisors pursuant to the provisions of the Subdivision Map Act (Bus. &. Prof. Code, § 11500 et seq.). The board of supervisors, by resolution, approved the plan and map. This plan called for the elimination of Knox Street by a new street to be known as Peru Avenue. As proposed, Peru Avenue was to intersect with Knox Street at a 45-degree angle in front of the Anderson property and then proceed southerly along the line of Knox Street to its intersection with Felton. This would create in front of the Ballance and Quong Soon properties an angular section of abandoned property. The subdivision map called for Peru Avenue to be graded to the "official grade." As fixed by the board of supervisors prior to 1905 the official grade in front of the Anderson property was 415 feet, but the subdivision map fixed this grade at 411 feet, and it was at this grade that the street was ultimately constructed. The 411-foot grade was about 5 feet higher than the natural grade on

*This plaintiff died before trial. His executor was substituted as a party, but no further activity on his part appears in the record. The case proceeded to trial with Schultz, Anderson and Ballance as plaintiffs, and they are the only parties granted judgment.

the easterly side of Knox Street, abutting on the Anderson property.

On August 29, 1949, Vallerga and Mesak entered into a contract to sell their property to the Atlas Realty Company, the contract providing that title was not to pass until after Vallerga and Mesak had completed the street work called for by the subdivision plan.

On August 23, 1949, Vallerga and Mesak had contracted with defendant Fay Improvement Company for that company to do the street improvements for the tract, and on September 1, 1949, they contracted with defendant Robert A. Farish to do the rough grading for the subdivision, including making a cut on the west side of Peru Avenue and making a fill on the east side of that street, formerly Knox Street.

Vallerga and Mesak then entered into a new arrangement with Atlas whereby Atlas purchased the subdivision, the buyer taking an assignment of the Farish and Fay contracts for the grading and street improvements. The deed in this deal was executed in December, 1949.

In the meantime, in the fall of 1949, Paul Fay, Jr., on behalf of the Fay Improvement Company, approached the plaintiffs. He told them that the Fay company was going to do extensive work for the subdivision, and that it would be to plaintiffs' interests to agree to have the Fay company, at the same time, pave Knox Street, and to provide sewers for Schultz and Anderson. He represented that Peru Avenue, to be constructed for the subdivision, was to intersect Knox Street at an angle in front of the Anderson property, and then curve along the line of old Knox Street to Felton, so that a portion of Knox Street would thus become a part of Peru Avenue. He also told the plaintiffs that Peru Avenue would be a paved roadway with curbs and sidewalks; that it would have sewers for Schultz and Anderson; that it would be graded to the "official grade"; that at the intersection with Felton this official grade would be at the present grade of Knox Street; that in front of the Anderson property the official grade would be 2½ feet higher than present Knox Street, and in front of the Ballance property it would be 4 feet higher; that the difference in grade would not only not adversely affect the plaintiffs, but, because the new street would be paved and would have sewage connections, their property values would be enhanced. The plaintiffs, based on these representations, in October or November, 1949, signed an agreement dated August 23, 1949, agreeing to the improve-

ment and agreeing to pay a proportionate portion of its cost. The agreement called for grading Peru Avenue at the "official grade," for paving the street, and for the construction of curbs and sewers. By thus securing the consent of the abutting property owners the subdividers eliminated the lengthy procedure set forth in the ordinances of San Francisco for the involuntary assessment of plaintiffs' lands.

In August of 1949, while Vallerga and Mesak were negotiating with Atlas, Vallerga told Atlas that the street work in question was to be done by Fay through private contracts between Fay and the adjoining property owners who had consented to the improvement, and similar representations were made to Farish. As a result, Atlas, sometime after December 16, 1949, entered into the contract between Fay, Vallerga and Mesak, and the plaintiffs, for the improvement of Peru Avenue and Knox Street.

Fay applied to the city and county of San Francisco for a permit to do the work, and such a permit was issued by the city. Fay then furnished Farish with a map obtained from the city which set forth the official grades. A city engineer came to the site and put in grade stakes in accordance with the official grades as set forth in the subdivision map. In January, 1950, on orders from Atlas, Farish commenced grading Peru Avenue. In order to rough grade this street at the fixed grade Farish cut into the west bank of Peru Avenue to a depth of 2 to 4 feet and moved this dirt to the east or lower side of the street. This had the effect of raising the height of Peru Avenue above the old easterly line of Knox Street some 5 feet in front of the Anderson property and as much as 14 feet in front of the Ballance property. The new street is so high in front of their properties that plaintiffs' garages are completely useless and it is impossible for them to get sewer connections. Their only method of access to their homes is by foot.

Plaintiffs, as soon as it became apparent that the improvement would seriously and adversely affect their respective rights of ingress and egress, complained vigorously to Fay and then to the city and county. Getting no relief they filed their complaint for injunctive relief, and subsequently filed an amended complaint, this time joining with their cause of action for an injunction a cause of action for fraud, seeking reformation of their contract and specific performance as reformed, or, in the alternative, damages. No preliminary injunction was sought or granted, and defendants went ahead

and finished the construction work, and started construction of homes in the subdivision. Originally the city and county of San Francisco was joined as a defendant, but its demurrer was sustained with leave to amend. Plaintiffs failed to amend and the city and county was dropped as a defendant.

On August 31, 1950, the board of supervisors, by ordinance, accepted Peru Avenue as built. Atlas then paid Fay for the street work done for Atlas, and Fay billed the plaintiffs for their share of the work done on Peru Avenue. Plaintiffs refused to pay.

It should be mentioned that the stock of Atlas Realty Company is wholly owned by Carl and Fred Gilbert, and that Standard Building Company, the builder of some of the houses in the subdivision, is a partnership of the two Gilberts.

The court held that plaintiffs, as against all the defendants, were entitled to both damages and a mandatory injunction. It granted Schultz a joint and several judgment for $1,250 as against Fay Improvement Company, Standard Building Corporation, Atlas Realty Company and Robert A. Farish, and granted Ballance $1,750 and Anderson $3,550 against the same defendants. These amounts were determined to be the amounts plaintiffs' properties would have been enhanced in value had the contract been performed as represented. The court then found the maintenance of the street as constructed was a nuisance as to plaintiffs, and that plaintiffs were entitled to have Knox Street restored to its original condition. The court therefore ordered all the defendants to remove the soil placed on the east 12 feet of Knox Street as part of the re-grading and to restore the street to its original grade. Plaintiffs were each awarded $20 a month against defendants as damages to be paid until the obstruction to their ingress and egress was removed. To comply with the injunctive provisions of the judgment would require dividing Peru Avenue and constructing a retaining wall.

■ It is quite clear that the injunctive provisions of the judgment are erroneous. Such provisions purport to compel the contractors and subdividers to remove a completed and accepted public street built according to government approved plans and specifications. This cannot legally be done.

There can be no doubt that plaintiffs have been damaged, and seriously damaged, by the construction of Peru Avenue. The evidence shows that Knox Street was a dedicated street throughout its entire length. ■ The use by the public of a certain area as a street for a long uninterrupted period of

time creates a public highway by prescription or implied dedication without a formal declaration by the governmental agency involved. (*People* v. *Power,* 38 Cal.App. 181 [175 P. 803].) Clearly, at the very least, plaintiffs were the owners of a prescriptive easement.

This easement included not only the right to use the street in common with the public, but also included a private easement of ingress and egress to their respective properties. This right cannot be taken away, damaged or interfered with for a public purpose without just compensation. (*Rose* v. *State,* 19 Cal.2d 713 [123 P.2d 505] ; *Bacich* v. *Board of Control,* 23 Cal.2d 343 [144 P.2d 818] ; *People* v. *Ricciardi,* 23 Cal. 2d 390 [144 P.2d 799].)

This right of ingress and egress has been seriously impaired by the construction of Peru Avenue. Plaintiffs are clearly entitled to compensation for such impairment. They could undoubtedly have secured an injunction against defendants, prohibiting the construction of the improvement unless or until compensation for their loss was provided. They were not required to sit back and wait until the injury occurred and then rely upon an action for damages. They could have anticipated the impending loss and have prevented the same by a prohibitory injunction or temporary restraining order against the contractors. (*Mulvey* v. *Wangenheim,* 23 Cal.App. 268 [137 P. 1106] ; *Geurkink* v. *City of Petaluma,* 112 Cal. 306 [44 P. 570] ; *Wilcox* v. *Engebretsen,* 160 Cal. 288 [116 P. 750].) *Sievers* v. *Root,* 10 Cal.App. 337 [101 P. 925], is directly in point. In that case the official grade had been established, and, after the plaintiff had improved his property, the board of supervisors increased the grade of an abutting intersection which damaged plaintiffs' right of access. A prohibitory injunction against the contractor was affirmed. At page 340 it is stated:

"That a land owner is entitled to compensation under the constitution of this state for such damages as were proved and found by the court in this case, is amply sustained by the following authorities: [Citations.]

"He may recover his damages in an action at law, after they have been inflicted [citations] ; or *he may prevent the threatened injury by injunction.* [Citations.] . . .

". . . 'Until compensation was made, the city [*or its licensee*] had no right to damage the plaintiff's property. Payment of such damage was a *condition precedent to the creation of the right* ; and, until payment, the city was a trespasser.

In such a case injunction is the plain, ordinary, and best remedy.' (*Geurkink* v. *Petaluma,* 112 Cal. [306] 310 [44 P. 570].)

". . . Until compensation has been made to plaintiff for the damage to his property, *the ordinance changing the grade is as to him invalid and of no effect.*" (Italics added.)

Thus, there can be no doubt that plaintiffs were entitled to damages for the impairment of their respective rights of ingress and egress, and that they could have secured an injunction prohibiting the construction until they were paid. But in the instant case plaintiffs have been granted a mandatory injunction against the contractors and subdividers compelling them to restore Knox Street to its former condition after the improvement has been completed and accepted by the city. That they had a right to a prohibitory injunction against the contractors is clear, but even before they filed their complaint Farish had rough graded the street to its new level, and, after filing, no temporary restraining order was sought to prevent the completion of the work. The city has accepted the improvement and the public use has attached. Under such circumstances, even if the proceeding could be considered an inverse condemnation proceeding, which it is not, the contractors and subdividers would not be liable for the damage caused by the impairment of the right of access. The city and county having authorized and accepted the improvement, caused the impairment, and it alone is liable in a condemnation proceeding. It, however, is no longer a party to this action. The contractors not being liable for the impairment certainly cannot, by mandatory injunction, be compelled to restore the status quo.

The law is well settled that the contractors or subdividers could not be held liable for the damage in a direct or inverse condemnation suit. ■ " 'If the contractor follows the plans and specifications furnished by the public agency, and damage results to the adjacent property, the public agency and not the contractor is liable.' " (*Heimann* v. *City of Los Angeles,* 30 Cal.2d 746, 757 [185 P.2d 597], quoting from *Veterans' Welfare Board* v. *City of Oakland,* 74 Cal.App.2d 818, 832 [169 P.2d 1000] ; see also *Marin Mun. W. Dist.* v. *Peninsula Paving Co.,* 34 Cal.App.2d 647 [94 P.2d 404] ; *De Baker* v. *Southern Calif. R. Co.,* 106 Cal. 257 [39 P. 610, 46 Am.St.Rep. 237] ; *Shaw* v. *Crocker,* 42 Cal. 435 ; *Eachus* v. *Los Angeles,* 130 Cal. 492 [62 P. 829, 80 Am.St.Rep. 147] ; *Engebretson* v. *Gay,* 158 Cal. 27 [109 P. 879].) The reason

for the rule is obvious. In case of damages in an inverse condemnation proceeding it is the public that has devoted the property to the public use, and the public and not the private contractor should pay for the damage. The damage to the right of access was, in effect, a taking by the government for a public use. The fact that in the instant case the contractor was performing work for a private subdivider has no legal significance. As far as the regrading of the street is concerned the work was being done on a public street under a government permit. The wrongful act entitling the plaintiffs to compensation was that of the city and county.

Plaintiffs, in apparent recognition of the force of the above arguments, contend that they have no application here because, so it is claimed, the approval of the subdivision by the city and county was void, and the contractors had no right to rely upon it. The approval was void, it is contended, because such approval was given by resolution of the board of supervisors and that this was unlawful because an ordinance was required. The distinction between the two in this connection is quite technical, both being legislative in nature. In any event, after giving approval, the city and county subsequently accepted the street by ordinance. This cured the defects, if any, in the original approval. The other arguments about invalidity of the proceedings are equally unavailing and must fall with the formal acceptance by the city and county of the street.

Thus, so far as the first cause of action for an injunction, or for damages in an inverse condemnation proceeding is concerned, if anyone is liable it is the city and county, not now a party to this case. The defendants followed the plans and specifications approved by the city and county. They are protected from direct or indirect results of this condemnation. This is so even if there were, as urged by plaintiffs, several serious procedural defects in the changing of the grade. These defects were the legal responsibilty of the city and county, and not of the contractors. They were not jurisdictional defects. They did not affect the city and county's right to impair plaintiffs' rights subject to paying just compensation.

The second cause of action for damages was, in effect, for fraud. It was on this cause of action that the trial court awarded the three plaintiffs substantial damages. Of course, if any of the defendants were fraudulent, and such fraud caused damage to plaintiffs, such fraudulent defendants are liable to plaintiffs independently of any rights the plaintiffs

may have in a proper condemnation proceeding, direct or indirect.

The evidence clearly supports the finding that Paul Fay, Jr., acting on behalf of the defendant Fay Improvement Company, made material misrepresentations to plaintiffs that he did not know were true; that such representations were made with the intent to induce the plaintiffs to act upon them; that plaintiffs reasonably believed they were true, and that plaintiffs relied upon them to their damage. Thus, fraud was clearly established so far as Fay Improvement Company is concerned. (*Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412 [159 P.2d 958].)

The plaintiffs testified that Fay represented that the grading of Peru Avenue would result in raising the grade of old Knox Street 2½ feet and not more than 4 feet; that this difference in grade would not injure plaintiffs, but, in fact, would enhance the value of their properties; that sewers would thus be made available to Schultz and Anderson. These representations were material because plaintiffs would not have consented to the improvement had they not been made. They were false, and it is a reasonable inference that Paul Fay, Jr., being an engineer, knew or should have known that they were false. These representations were made with intent to secure plaintiffs' consent to the improvement, and they, as laymen, reasonably relied upon them. Thus, fraud against this company was shown.

Did plaintiffs suffer legal damage because of such fraud? It is quite apparent that they did. While it is true that defendants, under the applicable provisions of the statutory law of the city and county, could have lawfully performed the work upon obtaining the consent of the owners of 60 per cent of the frontage upon a street "between main intersections," it is extremely doubtful that such 60 per cent consent could have been secured here without including some of the plaintiffs. If the "area" involved under these ordinances means the total frontages on Knox Street, and if the area "between main intersections" means from the intersection of Knox and Felton to the dead end, 60 per cent consent could not be secured without some of the plaintiffs agreeing. This is a reasonable interpretation of these provisions. Moreover, even if 60 per cent consent could have been secured without the plaintiffs, the ordinances provide for notice to the minority and an opportunity for protest. Thus, the regrading was made possible by Fay fraudulently securing the consents. Thus, the

fraud of Fay was a proximate cause of the damage that deprived plaintiffs of the access to their properties without an opportunity to be heard.

■ As to defendants Atlas Realty Company, the subdivider, and Standard Building Corporation, the builder, it is clear that the judgment against them for damages for fraud cannot be sustained because they were not parties to the fraud nor was Fay, Jr., their agent. The trial court did not expressly find that Fay, Jr., in making the false representations acted as the agent of these two companies. It imposed liability on the theory of ratification, that is, that these two companies "by continuing to obstruct Knox Street after the filing of the complaint herein, ratified and accepted" the acts of Paul Fay, Jr.

There is certainly no evidence that would support any finding that Fay, Jr., acted as the agent or purported to act as the agent of these two companies when he made the false representations. This being so, there could be no ratification.

■ Ratification is the subsequent adoption by one person of an act which another without authority assumed to do as his agent. (See cases collected 2 Cal.Jur.2d 731, § 75.) The proper rule, supported by many cases, is stated as follows in 2 California Jurisprudence 2d 741, section 83:

"But since ratification contemplates an act by one person in behalf of another, there must exist at the time the unauthorized act was done a relationship, either actual or assumed, of principal and agent, between the person alleged to have ratified and the person by whom the unauthorized act was done. For example, one cannot ratify a contract entered into by a corporation which did not in fact act, or assume to act, for him.

"Furthermore, the prevailing view is that there can be no ratification if the person who performed the unauthorized act did not at the time profess to be an agent."

■ In apparent recognition of the application of this rule to the facts of this case plaintiffs argue that even if ratification is inapplicable an estoppel exists. It is argued that these two defendants knew that plaintiffs' consents were necessary and they knew or should have known that such consents would never have been granted had plaintiffs been honestly informed. This is not a basis for an estoppel. Neither of these corporations committed any act that deceived the plaintiffs. These defendants owed no duty to the plaintiffs. Fay did not even represent to the plaintiffs that he was acting on be-

half of these defendants, and there is no evidence that plaintiffs believed he was. Atlas agreed to pay to the Fay corportion its proportionate share of the cost of the improvements, that is, for the improvements on the west side of the street. This it had a right to do. There is not only no finding of estoppel, but no evidence to support such a finding had one been made.

The same conclusion is applicable to plaintiffs' argument that Atlas was the undisclosed principal of Fay. All the evidence demonstrates is that Fay was acting for his own company alone in making the representations, trying to get plaintiffs' consent to the improvements and to secure their agreement to pay his company for them. The judgment against these two defendants must be reversed.

The trial court also rendered a money judgment for fraud against Farish. The trial court concluded as to him that Fay in making the false representations acted as the agent of Farish. This finding is unsupported. While Farish may or should have known that it was necessary to secure plaintiffs' consents to perform the work, this does not support a finding that Fay was Farish's agent. Farish's contract to rough grade the street was with Atlas, not with the Fay Improvement Company. When Farish made the cut and moved the dirt from the west to the east side of the street he was complying with his contract with Atlas, and not assisting the Fay company. Fay, Jr., was obviously acting on behalf, and solely on behalf, of his own company. Plaintiffs did not contract with Farish. Their contracts were with Fay. Farish received no compensation from either plaintiffs or Fay. He received his compensation and took orders solely from Atlas. Thus, the fraud judgment against this defendant must be reversed.

Under the evidence, the only defendant liable for damages for fraud is the Fay Improvement Company. But even as to this defendant the judgment must be reversed for a retrial on the issue of damages, because the trial court imposed the wrong measure of damages. The proper measure of damages is that set forth in *Bagdasarian* v. *Gragnon*, 31 Cal.2d 744 [192 P.2d 935]. That case held that section 3343 of the Civil Code incorporates the so-called ''out of pocket'' rule as the proper measure of damages in fraud cases. Here the trial court awarded damages predicated on the enhanced value of the property had the contract been performed in accordance with the representations, and the value of the prop-

erty before the contract was entered into. This is not the "out of pocket" rule. Under that rule the plaintiffs are entitled to the difference between the actual value of that with which they parted and that which they received—the decrease in value caused by the fraud, and not the increase of value that would have been realized had the fraud not been committed.

It is therefore ordered that the injunctive provisions of the judgment are reversed as to all defendants; that the money damage provisions of the judgment are reversed as to all defendants with the exception of Fay Improvement Company; that as to Fay Improvement Company the portions of the judgment finding it liable to the plaintiffs for fraud are affirmed, but the portions of the judgment fixing the amount of the damages are reversed because of the application of the incorrect rule of damages. It is further ordered that as to Fay Improvement Company the cause be retried on the issue of damages alone. In the interests of justice, and acting pursuant to rule 26, it is further ordered that all appellants, other than Fay Improvement Company, shall recover their costs on appeal, and that Fay Improvement Company shall bear its own costs.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied September 1, 1955, and respondents' petition for a hearing by the Supreme Court was denied September 28, 1955. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.