[Civ. No. 16997. First Dist., Div. One. Dec. 4, 1956.]

WILLIAM C. HAMILTON et al., Appellants, v. M. H. HARKINS et al., Respondents.

Houlihan & Brown for Appellants.

Mullally & Wines and Lawrence E. Mullally for Respondents.

PETERS, P. J.—Eight property owners, the appellants, brought this action against respondents, who are general contractors, and the city of Oakland to recover damages for injuries to their respective home properties caused by a landslide which it is alleged was caused by the improper installation of sewers planned by the city and installed by respondents. The trial court, at the conclusion of plaintiffs' case, granted the defendant contractors' motions for a nonsuit. From the judgment based thereon plaintiffs appeal. The city of Oakland is not involved on this appeal.

The case proceeded to trial on the issues framed by the fourth amended complaint and the answer thereto. The fourth amended complaint alleges that the defendant city in planning the construction and location of the sewers adopted plans that were inherently dangerous to the property of plaintiffs, because the land in the area had numerous springs and watercourses and was subject to landslides; that the sewer trenches were so designed "as to remove from plaintiffs' land the lateral and subjacent support" existing prior to the construction; that the defendant city knew or should have known of these facts; that the plans for the sewer were "prepared incompetently and contrary to good engineering practices"; and that the defendant contractors "did install the said public sewers in conformity with the plans and specifications" prepared by the city. Defendant contractors admitted that they performed the work according to the plans and specifications, and denied liability.

Under the issues thus framed it is admitted that defendant contractors installed the sewers in conformity to the plans and specifications without negligence. It should also be noted that there is no averment that the contractors knew or should have known that the plans drafted by the city were inherently dangerous. After plaintiffs' opening statement, the defendant contractors moved for a nonsuit on the ground that under such circumstances no liability existed. The motion was denied upon plaintiffs moving to amend their fourth amended complaint in the following respect: "That the defendants, and each of them, knew, or in the exercise of reasonable care and diligence, should have known that said plans and specifications were inherently dangerous to the property of the plaintiffs, and each of them, and would cause damage to said property, as hereinafter alleged, if said public sewers were installed in conformity therewith."

Over defendant contractors' objections the motion to amend

was granted. The case then proceeded to trial on the issues thus framed. At the conclusion of plaintiffs' case the contractors again moved for a nonsuit. This time the motion was granted, and judgment directed to be entered for defendant contractors. From this judgment plaintiffs appeal.

On such an appeal, of course, all the evidence and all reasonable inferences from such evidence must be indulged in favor of appellants. Tested by this standard, the evidence shows the following:

The appellants own eight houses in a hilly portion of Oakland, which, prior to 1949, were serviced by septic tanks. The area is a natural drainage area. The city, acting pursuant to the provisions of the Street Improvement Act of 1911, proceeded to have a public sewer system installed in the area. This improvement was planned to be installed partially in the public streets and partially in an easement extending across the area between appellants' houses which were located four on one street and four on another, the houses being back-to-back to each other. The general area, prior to the sewer installation, had leaking septic tanks, and possibly some springs. These facts were known to the city employee who prepared the plans for this work, who also knew that the area was a general drainage area, and that, in the past, several slides had occurred nearby. The respondents, who are general contractors, secured the contract to install, and did install the sewers. Admittedly, they did so without negligence, and in precise accordance with the plans and specifications. The job was completed in January of 1950. The slide occurred in February of 1952 during a winter of extraordinary heavy rainfall. All eight houses were destroyed or seriously damaged by the slide.

The employee of the city who prepared the plans and specifications testified that he knew that prior slides had occurred in the general area; that he did not provide for any special protection in the area where the sewer ditch crossed private property; that in accordance with usual custom he provided for the compacting of the backfill of the ditches by power equipment only where the ditches were cut in the streets; that the specifications did not require the contractor to compact the soil in other than the street areas; that power compacting was required in the street areas to prevent the walls of the ditch from caving in and to prevent the settling of the backfill due to the anticipated heavy loads in the street area; that, although he saw wet spots in the area while a survey of it

was being made, the city engineer's office treated the installation as a "dry" one and not a "wet" one; that no consideration was given to these wet areas, and no study of the wetness of the soil was made, nor were any borings or soil tests made.

The appropriate city officials also testified that respondents constructed the sewer in conformity with the plans and specifications to the satisfaction of the city, and that the city accepted the work, certified its completion and paid the respondents the contract price.

Respondents are not engineers but general contractors engaged primarily in sewer work. The respondent who carried on negotiations with the city testified that he had no knowledge of, nor had anyone told him about, the prior slides in the area; that in bidding on the work he did not read all the specifications but read only those portions calling for special work, that is, work different from that involved in prior contracts with the city; that, prior to bidding, several of the partners visited the general area simply to see how much of the digging could be done by machines, rather than by hand, and how much street work was involved; that his firm made no tests or inquiries about the stability or content of the soil; that he asked the city engineer's office if there was anything special about the job or different from prior plans and specifications furnished by the city on prior jobs and was told that there was not; that he made no inquiry about the water table, soil conditions, land stability or surface water conditions in the area.

Experts called by appellants testified that, had the backfill in the sewer trench been power compacted, the slide would have been prevented, and that if the planner of the project knew of the prior slides the plans and specifications were defective in design.

It is a reasonable inference from this evidence that the plans and specifications were defective, and that the damage was caused by the failure of the city to provide plans and specifications that would have protected appellants from a danger known to the city. But there is no evidence that respondents knew or reasonably should have known that the plans were defective or that their execution would result in appellants' damage. The plans did not show on their face that they were defective. Under such circumstances, are the contractors liable? That is the question presented.

Appellants argue that when the plans are defective, the

contractors are liable as joint tort feasors with the public agency for all damages resulting from the execution of the defective plans regardless of whether the contractors have knowledge of the defects or not. There is no merit in this argument. Although the language used in some of the cases has not always been consistent, we think the proper rule is that on public work a contractor is liable to the damaged property owners only where he is negligent in the performance of the contract (admittedly not here present), or, where the plans are defective, the contractor knows or should have known that the defect existed and that if the contract were performed as specified damage might ensue. But the contractor is not liable where the plans and specifications prepared by a public agency are defective but the contractor has no knowledge, express or implied, of the defect.

The appellants, to establish their claim of liability on the part of the contractor for mere execution of defective plans regardless of knowledge on the part of the contractor, rely mainly on three cases: *Kaufman* v. *Tomich*, 208 Cal. 19 [280 P. 130]; *Perkins* v. *Blauth*, 163 Cal. 782 [127 P. 50]; *De Baker* v. *Southern Calif. Ry. Co.*, 106 Cal. 257 [39 P. 610, 46 Am.St. Rep. 237]. Although there is some ambiguous language in each of these cases which seems to support the rule contended for by appellant, properly analyzed none of the cases establishes such a rule. In *Kaufman* v. *Tomich*, 208 Cal. 19 [280 P. 130], both the city and the contractor were sued by a property owner for injury to her property caused by the installation of a sewer. The plaintiff recovered judgment against both defendants. This was affirmed. The Supreme Court recites that the theory of the plaintiff was that the damage "resulted from the joint negligence of the city in improperly planning and locating the sewer line, and of the contractor in undertaking to install the sewer as so improperly planned and aligned. There are also allegations of the contractor's negligent performance of the work." (208 Cal. at p. 21.) The Supreme Court adopted the dissenting opinion of a District Court of Appeal Justice, approving his statement "that if the act commanded by the municipality was inherently wrong, then both the municipality and the agent performing the work would be answerable in damages to anyone injured thereby, even in the absence of negligence in its performance. This declaration finds support in *Perkins* v. *Blauth*." (208 Cal. at p. 21.) The facts of the Kaufman case were that the sewer was constructed so close to plaintiff's

property that the property collapsed into the sewer ditch during construction. The trial court found that the sewer was located in obvious dangerous proximity to plaintiff's land, and that both the city and the contractor should have known this fact. While the language of the court is confusing, it is apparent that this was a case where the plans drawn by the city were wrong and the contractor should have known that this was so. Moreover, there are several statements in the opinion to the effect that the contractor negligently performed the work involved. Thus, the case actually stands for the proposition that either where the contractor is negligent, or performs a contract when he knows or should know the construction is dangerous to adjoining property owners, he is liable for ensuing damages. Certainly, the case cannot be distorted into a holding that the contractor is liable where he is not negligent, and where he does not or should not know that the work is inherently dangerous.

The *Perkins* v. *Blauth* case, 163 Cal. 782 [127 P. 50], is clearly not in point on the question under discussion. There plaintiff's property was flooded because the trustees of a reclamation district authorized a contractor to cut a ditch through the bank of the Sacramento River and the contractor failed to protect the area with a suitable dam. As to the contractor, a nonsuit was granted, and a judgment rendered against the trustees of the district. The trustees appealed, and their liability was the sole question discussed. The question of the liability, if any, of the contractor, was not involved or discussed. Insofar as the case discusses the possible liability of the contractor, it predicates such liability on his active negligence in the performance of the work.

The last case relied upon by appellants is *De Baker* v. *Southern Calif. Ry. Co.*, 106 Cal. 257 [39 P. 610, 46 Am.St.Rep. 237]. In that case defendant's predecessors were granted certain lands along the Los Angeles River upon condition that the grantee construct and maintain a certain levee along designated portions of the river bed for the benefit of the city of Los Angeles. The levee, as actually constructed, did not stop at the point designated by the city but continued for about a mile into and nearly across the river bed. Two years later an unusual flood occurred and the water, being prevented by the additional and unauthorized portion of the levee from following its natural course, overflowed onto plaintiff's lands. "[B]ut for this unauthorized addition to the levee, as planned by the city, the damage to plaintiff's lands would not have

occurred." (106 Cal. at p. 281.) The court, in reversing on a procedural point, indicated certain "views" regarding other "questions likely to arise in the future progress of the litigation" (106 Cal. at p. 282) as follows: "Conceding that the negligence complained of consisted solely in the faulty plan and location of the work, and not at all in the manner in which it was executed by the defendant, it seems to be settled by the decisions of this court that if the damage was actionable the city and the defendant would be jointly and severally liable. To place an unlawful obstruction in the bed of a stream, by which the current is directed into a new channel across another's land, makes a case clearly within the principle recently applied in *Green* v. *Berge,* 105 Cal. 52 [38 P. 539, 45 Am.St.Rep. 25], and in the cases therein cited. If the work was such as to make the city liable, it made the defendant liable also, and the plaintiff could maintain her action against either or both. Of course, if the city exercised such care and skill in creating the plan and fixing the location of the work as to exempt it from any liability to the plaintiff, and the damage was wholly caused by such location and plan— no negligence being attributed to the defendant in the construction of the work, nor any departure from the plan—the defendant would be no more liable than the city. But if the work was inherently and according to its plan and location a dangerous obstruction to the river, such as ordinary prudence should have guarded against, not only the author of the plan to obstruct the stream, but the person placing the obstruction, was severally liable for the entire damage."

This language, which was dicta when separated from the facts, might be interpreted to mean that the contractor who carries out defective plans is liable regardless of knowledge, but, under the facts of the case, it is quite clear that the contractors who constructed the levee out in the river bed were chargeable with knowledge that the levee so constructed was potentially dangerous to plaintiff. This is made clear because the court stated that it was imposing liability upon the "principle recently applied in *Green* v. *Berge,* 105 Cal. 52 [38 P. 539, 45 Am.St.Rep. 25], and in the cases therein cited." (P. 282 of 106 Cal.) In the Green case the contractor performed the public work without negligence, but the excavation caused plaintiff's land to collapse. The Supreme Court reversed a directed verdict in favor of the contractor. In so holding, the court did state that all who unite in removing the lateral support from another's land are respon-

sible in damages. But the basis of the contractor's liability was placed upon his knowledge of the dangerous character of the act he was performing. At page 58 of 105 California, in referring to the contractor, the court stated: "Respondent knew, or should have known, that to make the excavation without supplying the support was unlawful. Having participated in it, he cannot avoid responsibility by pleading that he did the work under a contract." Knowledge or responsibility for knowledge was the basis of the contractor's liability. This was equally true in the De Baker case.

The most that can be spelled out of these cases cited by appellants is that where plans and specifications drawn by a public agency are inherently dangerous the contractor may be liable if he knows or should have known that the work might result in damage to the property owner. But none of the cited cases stands for the broad proposition that the contractor is responsible when he performs the work without negligence and is not chargeable with knowledge that the plans are inherently dangerous.

Respondents rely upon the rule stated in *Northwestern Pac. R. R. Co.* v. *Currie*, 100 Cal.App. 173 [279 P. 1057], where the court, in speaking of a situation where the contractor had no knowledge, express or implied, of the dangerous condition, stated, at page 175: "Where a county contracts for the doing of construction work according to plans and specifications theretofore adopted and the contractor performs the work with proper care and skill and in conformity with the plans and specifications, but the work thus planned and specified results in an injury to adjacent property, the liability, if any there is, for the payment of damages, is upon the county under its obligation to compensate the damages resulting from the exercise of its governmental power." This rule has been frequently stated in other cases where the contractor was not chargeable with knowledge. (*Marin Mun. Water Dist.* v. *Peninsula Paving Co.*, 34 Cal.App.2d 647 [94 P.2d 404]; *Veterans' Welfare Board* v. *City of Oakland*, 74 Cal.App.2d 818 [169 P.2d 1000]; *Anderson* v. *Fay Imp. Co.*, 134 Cal.App.2d 738 [286 P.2d 513]; *Gay* v. *Engebretson*, 158 Cal. 21 [109 P. 876, 139 Am.St.Rep. 67]; *Heimann* v. *City of Los Angeles*, 30 Cal.2d 746 [185 P.2d 597].)

From an analysis of the cases the rules to be derived are that the contractor may be liable for injury resulting from the performance of public work either where he performs the work negligently, or where the plans and specifica-

tions prepared by the public agency are inherently dangerous and the contractor knows or should have known that this was so. But if the plans and specifications are inherently dangerous because of facts the contractor does not know and of which he is not chargeable, and the contractor performs the work pursuant to the plans and specifications without negligence, then the contractor is not liable. That is this case. As already pointed out, the evidence would support a finding that the plans and specifications drawn by the city were defective because they should have called for the compacting of the backfill in the ditch crossing between respondents' properties. But such compacting was only required because the city engineers knew that the area was a slide area and was also a drainage area. Unless those facts existed, the construction of the ditch did not call for the compacting of the refill. There is not one word of evidence that the contractor knew that these facts existed. There is no evidence that the contractors were chargeable with knowledge of these facts. The contractors were not engineers. They were legally entitled to rely on the engineers employed by the city to determine the nature of the construction required. Thus, under the circumstances, there was a failure of proof so far as the contractors are concerned, and the nonsuit was properly granted in their favor.

 Appellants also argue that the respondents failed to state, with sufficient particularity, the grounds upon which the motion for a nonsuit was predicated. We have read the engrossed statement and the partial reporter's transcript dealing with this subject. The respondents clearly stated that there was no evidence of knowledge on the part of the contractors or of facts making them chargeable with knowledge, and that without such proof the nonsuit should be granted. The respondents met the burden of particularity required. (*Jacob* v. *Watson,* 113 Cal.App. 299 [298 P. 64].)

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied January 3, 1957, and appellants' petition for a hearing by the Supreme Court was denied January 30, 1957. Carter, J., was of the opinion that the petition should be granted.