Filed 3/11/21  Street v. Aon, Inc. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MICHAEL STREET,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>AON, INC. et al.,<br><br>    Defendants and Respondents. | E072477<br><br>(Super.Ct.No. CIVDS910518)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  John M. Pacheco, Judge.  Affirmed.

Glenn A. Williams, for Plaintiff and Appellant.

Law Office of Jillisa L. O'Brien, Jillisa L. O'Brien and Douglas E. Jacobs; Law Office of Robert William Morris and Robert William Morris, for Defendants and Respondents.

Plaintiff and appellant Michael Street appeals from summary judgment entered against him.  We affirm.

1

## I.  BACKGROUND

The essence of Street's lawsuit is that a single family residence secured by a deed of trust belonging to him was wrongfully demolished, rendering his security interest "valueless."  Street thus alleged that "Defendants, and each of them, acted to impair or deprive Plaintiff of his interest in the [real property] by demolishing the structures (including, inter alia, a dwelling, garage, and pool) located upon the [real property] improperly, without a valid warrant, without proper permits, and without following proper procedure."  (Italics removed.)  Defendant and respondent Aon, Inc. (Aon) was the contractor hired by the City of San Bernardino (City) for the demolition, and defendant and respondent Jim Morris is Aon's President and CEO as well as an 80 percent shareholder.  Aon and Morris were not the only defendants named, but they are the only ones involved in this appeal, so for simplicity we use the term "defendants" to refer only to Aon and Morris.[1]

The operative complaint contains eight causes of action.  These consist of four causes of action—trespass, negligence, "violation of statute," and inverse condemnation—each alleged once under a "with improper warrant" heading and once under an "entry without warrant" heading.  The inverse condemnation causes of action are alleged against only the City, but the other six are alleged against defendants (as well as the City and others).

---

[1]  Aon was dissolved during the trial court proceedings, but a dissolved corporation "nevertheless continues to exist for the purpose of . . . prosecuting and defending actions by or against it."  (Corp. Code, § 2010, subd. (a).)

2

The trial court granted defendants' motion for summary judgment. The court based its ruling on three grounds: first, that "all causes of action[] seek damages for acts done for the City . . . who authorized the acts under its exercise of authority whereby the City . . . is the only party who can be liable for damages to the [real property]"; second, that "Street lacks standing to sue for trespass as he held no possessory interest"; and third, that "Morris, as the officer and shareholder of Aon, cannot be jointly liable with . . . Aon when he did not personally and individually participate in the alleged tort."

## II. ANALYSIS

We independently review an order granting summary judgment. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) Nevertheless, "our review is limited to contentions adequately raised" in an appellant's briefs. (*Paslay v. State Farm General Ins. Co.* (2016) 248 Cal.App.4th 639, 645.)

On appeal, Street contends that defendants are not immune from liability and that Morris can be held individually liable. Neither contention has merit.

### A. Government Contractor Immunity

In their summary judgment motion, defendants contended that only the City could be held liable because the demolition was done according to the City's plans and specifications. Defendants relied on *Heimann v. City of Los Angeles* (1947) 30 Cal.2d 746 (*Heimann*), overruled on other grounds in *Los Angeles County v. Faus* (1957) 48 Cal.2d 672, 680. *Heimann* stated that "[w]here a public improvement has been constructed and private property has been taken or damaged for a public use it is

3

immaterial that the work of construction may have been done by a contractor. The public agency authorizing the work is the party to be held liable under the constitutional provision for damage resulting from the exercise of its power. If the public work is constructed according to the plans and specifications furnished by such public agency and upon completion is accepted by it, this is sufficient to fix liability." (*Heimann*, *supra*, at p. 756; see also *Tyler v. Tehama County* (1895) 109 Cal. 618, 626.) In other words, a contractor that follows a government entity's "plans and specifications" will be immune, and a plaintiff may seek recovery only from the government entity.[2]

Few recent cases in this state have applied the *Heimann* rule, but recent cases in other jurisdictions have explained the reasoning behind this immunity doctrine. A federal district court has described the rule in the following way:

"The rationale underlying the government contractor defense is easy to understand. Where the government hires a contractor to perform a given task, and specifies the manner in which the task is to be performed, and the contractor is later haled into court to answer for a harm that was caused by the contractor's compliance with the government's specifications, the contractor is entitled to the same immunity the government would enjoy, because the contractor is, under those circumstances,

---

[2] *Heimann* was an inverse condemnation case and states immunity applies when "private property has been taken or damaged for a public use" (*Heimann*, *supra*, 30 Cal.2d at pp. 749, 756), but cases both before and after *Heimann* make clear that "plans and specifications" immunity can apply in other contexts. (See, e.g., *Leppo v. City of Petaluma* (1971) 20 Cal.App.3d 711, 719; *Hamilton v. Harkins* (1956) 146 Cal.App.2d 566, 573-574; *Northwestern Pac. R. Co. v. Currie* (1929) 100 Cal.App. 173.)

effectively acting as an organ of government, without independent discretion. Where, however, the contractor is hired to perform the same task, but is allowed to exercise discretion in determining how the task should be accomplished, if the manner of performing the task ultimately causes actionable harm to a third party the contractor is not entitled to derivative sovereign immunity, because the harm can be traced, not to the government's actions or decisions, but to the contractor's independent decision to perform the task in an unsafe manner. Similarly, where the contractor is hired to perform the task according to precise specifications but fails to comply with those specifications, and the contractor's deviation from the government specifications actionably harms a third party, the contractor is not entitled to immunity because, again, the harm was not caused by the government's insistence on a specified manner of performance but rather by the contractor's failure to act in accordance with the government's directives." (*Bixby v. KBR, Inc.* (D. Or. 2010) 748 F.Supp.2d 1224, 1242 (*Bixby*).)

The "plans and specifications" doctrine thus turns on whether the conduct causing a plaintiff's harm was the result of, on the one hand, government plans and specifications, or on the other hand, a contractor's independent decisions, i.e., the "discretion in determining how the task should be accomplished." (*Bixby*, *supra*, 748 F.Supp.2d at p. 1242; see also *Nettles v. GTECH Corporation* (Tex. 2020) 603 S.W.3d 63, 69 ["Put simply, these courts ask (1) did the government tell the contractor what to do and how to do it (as opposed to the contractor having 'some discretion in performing the contract');

5

and, if so, (2) did the contractor do as it was told?  When the answer to both questions is yes, these courts extend a form of immunity to the contractor's conduct."], fns. omitted.)

Street contends that the immunity provided by this doctrine only applies when a contractor is "building . . . a work of public improvement," not when the "demolition of structures" is involved, as here.  He further contends that, even if the doctrine applies to the demolition of structures, there are material factual questions about whether it would apply in this case.  Neither contention is convincing.

First, in *Leppo v. City of Petaluma* (1971) 20 Cal.App.3d 711, the Court of Appeal squarely found that """"plans and specifications"""" immunity applied to a demolition contractor.  (*Id.* at p. 719.)  Street has offered no reasoned argument why we should not follow *Leppo*.  The trial court relied on *Leppo* in its summary judgment ruling, but Street did not seek to distinguish the case or even discuss its substance in his opening brief.  In his reply brief, Street concedes that, under *Leppo*, "the concept of 'work of public improvement' is broad enough to encompass demolition of a building."

Second, Street contends that there were no "'plans and specifications'" from the City on this project, but even if this is true, this does not mean that immunity did not apply.  Rather, it means that, in order to establish liability, Street needed to identify how "the manner of performing the task ultimately cause[d] actionable harm." (*Bixby*, *supra*, 748 F.Supp.2d at p. 1242.)  Otherwise, Street's lawsuit against defendants would be premised simply on the fact that a demolition took place, in which case it would be proper to view defendants as carrying out the City's instructions and for immunity to

6

extend to them. Street has not attempted to show how defendants' manner of doing the demolition harmed him.

Finally, although Street contends that there were no "plans and specifications" provided by the City, he also contends that to the extent there were any plans and specifications, defendants violated them. Not so. Street alleges that defendants violated the terms of an "Inspection/Abatement/Demolition/Administrative Warrant," which specified that demolition had to take place within 30 days. However, the warrant was issued by a trial court judge to the City, not to defendants, and thus the warrant is not direct evidence of any restriction or specification the City placed on defendants. Moreover, Street has not proffered any evidence indicating that defendants were aware of the warrant's limitations, or that the City instructed defendants to demolish the house within similar time limits.[3] And again, even if we were to assume that defendants violated the City's plans and specifications with an untimely demolition, Street has not attempted to show how the untimeliness has harmed him.

Accordingly, Street has not shown that the trial court erred in granting summary judgment on this ground.

B. *Individual Liability*

Defendants asserted, and the trial court found, that Morris cannot be held individually liable for Aon's actions absent participation or ratification of the

---

[3] In fact, the evidence suggests the City gave defendants no practical chance to observe the 30-day limit in the warrant. The warrant was issued on June 16, 2008, but the City issued Aon a demolition permit only on July 15, 2008.

corporation's wrongdoing. The rule invoked by defendants and applied by the trial court is that "[d]irectors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done" (*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.* (1970) 1 Cal.3d 586, 595).

In opposing summary judgment in trial court and on appeal, Street does not contend that Morris personally participated in any alleged tort; rather, Street contends that the above rule does not apply because of the "alter ego doctrine." But alter ego is not the same thing as individual liability based on participation. The rule defendants invoked to obtain summary judgment depends on whether there was individual participation in a tort. That inquiry is objective, and applies on a tort-by-tort basis when applicable. Defendants' showing is unrefuted here.

The alter ego doctrine, on the other hand, is not a stand-alone cause of action. (See *Leek v. Cooper* (2011) 194 Cal.App.4th 399, 418.) Rather, it is a remedial doctrine that makes shareholders generally liable for a corporation's actions. (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300 ["The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests. [Citation.] In certain circumstances the court will disregard the corporate entity and will hold the individual shareholders liable for the actions of the corporation[.]"].) Alter ego depends on whether there is "'such unity of interest and ownership that the separate personalities of the corporation

8

and the individual no longer exist'" (*ibid.*), and alter ego is a matter of equity (*id.*at p. 301 ["the corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require"]).  Neither of these alter ego elements establish individual participation in a tort.  Although the alter ego doctrine could, if demonstrated, make Morris liable for a judgment that Street obtains against Aon, it is not alone a basis for liability.

A defendant cannot overcome summary judgment through a claim of alter ego alone.  To pierce the corporate veil, there must be a potential judgment behind it.  Thus, even if, as Street contends, Aon was "wholly inadequately capitalized," this has no bearing on whether Morris individually participated in Aon's alleged torts.[4]  Street has therefore failed to show any error in the trial court's ruling.

### III.  DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

McKINSTER
Acting P. J.

SLOUGH
J.

---

[4]  Additionally, the complaint does not allege Aon to be an alter ego of Morris.

9